UNITED STATES *v.* SNOW'S UNITED STATES SAMPLE EXPRESS CO. *et al.* (No. 1568).[1]

1. CURTAINS AS UPHOLSTERY.

    Madras muslin curtains and madras muslin curtain goods in the piece, both Jacquard figured, are, following Carter *v.* United Sattes (6 Ct. Cust. Appls., 253; T. D. 35473), within the lexicographic definition of upholstery, *i. e.,* the interior decorations of an apartment, and dutiable as " Jacquard figured upholstery goods," under paragraph 258, tariff act of 1913.

2. COMMERCIAL DESIGNATION.

    The evidence in this case fails to show that, by definite, universal, and general commercial designation, the interior decorations of an apartment are divided into different classes, of which upholstery is one.

United States Court of Customs Appeals, January 22, 1916.

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

*Comstock & Washburn* and *Miller & Bretzfelder* (*Albert H. Washburn, Geo. J. Puckhafer,* and *Cyrus Miller* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The goods here in question consist of madras muslin curtains and madras muslin curtain goods in the piece. They are cotton fabrics woven in various designs and colors, but all of the same general character, consisting of a light, open, or transparent background with Jacquard figured designs covering part of the surface. Duty was as-

---

[1] Reported in T. D. 36120 (30 Treas. Dec., 144).

sessed on all the goods at the rate of 35 per cent ad valorem under the provision for " Jacquard figured upholstery goods," under paragraph 258 of the tariff act of 1913. The curtains are claimed by the importers to be dutiable at the rate of 30 per cent ad valorem under the provision in the same paragraph for " all other Jacquard figured manufactures of cotton," and the piece goods are claimed to be dutiable at the appropriate rates under the provision for "cotton cloth " in paragraphs 252 and 253.

The only issue in the case is whether or not the goods are dutiable as upholstery goods. The Board of General Appraisers held that they were not so dutiable, and the Government brings this appeal.

This provision for upholstery goods was under consideration in Carter v. United States (6 Ct. Cust. Appls., 253; T. D. 35475), in which case the decision of the board in the present case was cited as an authority by the importers, and it was discussed at some length in the opinion. It was held in that case that the term " Jacquard figured upholstery goods " was broad enough to include such goods as they are defined by lexicographers—i. e., as the interior decorations of an apartment—and the omission in the act of 1913 of the words appearing in the act of 1909, limiting the Jacquard figured upholstery goods to such as weighed over 6 ounces per square yard was held to indicate a purpose to broaden the term " upholstery goods " to include goods of less substantial character and weight.

The result of the decision in the Carter case is to overrule the decision of the board in the present case as to the ground upon which the board rested its decision.

The statement appearing in the opinion of the board in the present case as to the effect of the testimony is as follows:

A large number of witnesses testified as to the trade or commercial understanding of the term " upholstery goods," and the kind and character of the goods included within that designation. Some of the witnesses were of opinion that only fabrics suitable for upholstering furniture and making draperies and hangings were upholstery goods, while others stated that the term included everything carried in the upholstery department in department stores, excepting carpets, but including laces and lace curtains, poles, brass-headed tacks, damask table covers, furniture covering, mats, etc. Eight importers' witnesses and one Government witness specifically stated that the madras in question was not included within the term " upholstery goods," and four Government witnesses stated that it was included within the term. The preponderance is fairly on the side of the importers, but it does not appear from the testimony of any of the witnesses that the commercial meaning differs from the common meaning of the term. The case therefore stands upon the common and usual signification of the words " upholstery goods."

The board then proceeds to a consideration of the dictionary definitions of upholstery and reaches the conclusion that the word is used in a broad and in a narrower sense, and that in the act of 1913

it was used in the narrower sense, and was restricted to a class of goods which would exclude madras curtains and madras in the piece designed for curtains.

Upon this point we adopted a different rule in the Carter case. In other words, we there held that these goods in question here fall within the common meaning of the term " upholstery goods," so that if the importer's case is to be sustained it must be upon grounds other than those which the board adopted in reaching its conclusion. Such grounds are urged. It is claimed that the board found the fact to be that these goods were not upholstery goods within the trade meaning of the term, and that the evidence in the case is sufficient to justify such a finding. It is a little difficult to know just what was intended by the board. They recite the testimony, and while they state that the preponderance is fairly on the side of the importers, they conclude by saying that it does not appear from the testimony of any of the witnesses that the commercial meaning differs from the common meaning of the term, and then proceed to decide the case upon the common meaning of the term.

We think that if the intention was to hold that the trade meaning of the term had been established by a preponderance of the testimony, this conclusion was not justified by the evidence adduced. The settled rule, which is sustained by the authorities cited in the Government's brief—Maddock *v.* Magone (152 U. S., 368), Sonn *v.* Magone (159 U. S., 417), United States *v.* Georgia Pulp & Paper Manufacturing Co. (3 Ct. Cust. Appls., 410, 414; T. D. 32998)—is that commercial designation, in order to be controlling, must be shown to be definite, uniform, and general in the trade. In the present case the testimony indicates that the term " upholstery goods" is not used in the trade in actual transactions of buying and selling. That is to say, a customer would not, in the ordinary course of trade, approach a seller with an inquiry for upholstery goods, but would inquire for tapestry, plush, etc., according to his needs. If there is such a classification, it is made by individual houses in the arrangement of their stock. Some houses maintain an upholstery department and a drapery department. In such houses the draperies for windows or doors would be found in the drapery department, and this would seem to have led some of the witnesses to conclude that draperies are not in any case upholstery, while others conclude that they may be classed as upholstery if of a quality and weight making them suitable for upholstering furniture. Other witnesses state that the use to which the material is put is the determining feature. If this be the test, the preponderance of the testimony shows that draperies for doors and windows are regarded as upholstery.

The importers' counsel state in their brief that perhaps the better distinction is found in the answer of the witness Reis, who testified:

You see you have two hangings. People that have two hangings for a window have a drapery, and then they have a hanging also. The drapery is for the window decoration and the heavy hanging is for the interior decoration—for the decoration of the room.

And that of the witness Darling:

You can not upholster a window.

As to the testimony of Reis, it may be said that it is not persuasive; that a line can be drawn between the outer and the inner drapery of a window and one be called interior decoration and the other something else. It needs no testimony to establish that both the inner and the outer draperies are intended for decorations. As to the statement of the witness Darling that you can not upholster a window, it is obvious that he uses the term "upholstery" in the narrow sense to provide "with a cover." It is equally clear that the difficulty he encounters in upholstering a window would be present whether the attempt be made to drape it with a heavier or a lighter material. To a better understanding of the testimony of this witness, whose fairness we do not question, we quote:

Q. In your conversations with people buying from you there, was there anything to indicate whether draperies were a form of upholstery goods or a separate thing?—A. Oh, yes.

Q. Was there that indicated that draperies were not merely one form of upholstery goods; namely, a light form of upholstery goods for windows?—A. You can not upholster a window.

*       *       *       *       *       *

Q. Here is what I mean. The fact that a thing is called a drapery—is known under the name "drapery"—does not necessarily mean that draperies may not be one of the forms of the more large and more general class of upholstery goods. If that is not so, tell me what there was in your conversations or transactions with these people that showed it was not so.—A. These goods could be by some persons included in the general term "upholstery goods," or goods of an upholstery department. On the other hand, upholstery goods could not, unless by some one hopelessly ignorant, be included in the term "drapery goods." That is as clear an answer as I can give you. I am trying to tell it clearly. Brass tacks are in the upholstery department, but they are not drapery goods, nor are they coverings.

This testimony would seem fairly to import that the term "upholstery goods," in a general sense, was intended to include draperies, but that the two terms are not synonymous. This is made more manifest by another quotation from his testimony:

Q. Speaking now of the wholesale people only, not the retailers, is the distinction that you have drawn between upholstery goods and madras muslins one that obtains among all the large dealers in that class of merchandise with which you come in contact?—A. Not all.

Q. What distinction, if any, do some of them make?—A. The distinction is goods for upholstery use and goods for drapery use. That is the distinction in the trade.

Q. That is the distinction in the trade?—A. Goods for upholstering furniture and goods for draping windows.

Q. And which are the exhibits in this case?—A. Drapery goods for windows, the same as laces or nets.

This shows that this witness had in mind a much narrower meaning for the term "upholstery goods" than several of the importers' witnesses, who recognized the term as including draperies; and it also shows that such use of the term is not restricted by all dealers, and furthermore that "draperies" include the goods in question. In this latter proposition he is supported by the witnesses for the Government.

True, some of the importers' witnesses draw a distinction between light-weight draperies, such as are here in question, and heavier draperies. This attempted distinction, however, we think results from a confusion in the minds of the witnesses and an attempt to get back to the idea that the term "upholstery" should be restricted to such heavy goods as are *suitable for coverings* and adopting in their own minds a definition which would exclude draperies *as such,* but include draperies when made from goods known as upholstery goods because of their adaptability to use as coverings of furniture. This is illustrated by the testimony of the witness Bryan:

Q. What was there that indicated that that distinction had anything to do with the question whether one was upholstery goods and the other was not?—A. Difference in the weight of the fabric would have something to do with it.

Q. I am not speaking about the weight of the fabric. I am speaking about the language used, written or spoken, that indicated whether one thing was upholstery goods or not and another thing was upholstery goods or not.—A. I have always understood the term related to heavier fabrics.

Q. Where did you get that understanding?—A. Just from my general business experience.

Q. Does that include the use of the term "upholstery goods" by anybody?—A. The term is generally understood in the trade.

Q. That distinction was not carried out in the bills or advertising or in correspondence or in letterheads or in anything of that sort?—A. Not especially.

Q. Just in the back of your mind somewhere?—A. Yes.

Q. Not in conversation with your customers?—A. Not specially.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Q. I will ask you again, have you never had a buyer come in and say, "Let me see a line of samples of your upholstery goods"?—A. Not that I recall.

And of the witness Roche:

Q. Now, what class of goods did it (upholstery goods) include?—A. Upholstery fabrics, fabrics used to upholster furniture, and thick material that might be used for that purpose.

Q. Name some of the kinds.—A. Portières, for wall decorations, plush; any pile fabric or any tapestry fabric that would be heavy enough to be used in upholstering furniture.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Q. Was there a distinction made in the trade between upholstery goods and madras goods to make curtains?—A. Yes.

Q. Were dealers in one dealers in the other?—A. Dealers who handled upholstery goods, unless furniture manufacturers, usually handled lace curtains or window decorations also.

Q. In invoicing or in buying or selling or in advertising was that distinction maintained between upholstery goods and madras and madras curtains?—A. Yes.

Q. During all your experience?—A. Yes.

Q. The words "upholstery goods" as used in the trade was used in what way—how would a man use it?—A. As a covering for furniture in most instances.

Q. In what way would the term be used in trade?—A. To describe the fabrics.

Q. Used in advertising?—A. Yes; to describe those fabrics I have described.

The basis of the statement of the witness Carl Ries, quoted in the brief of importers' counsel, is best seen by a fuller quotation from his testimony:

Q. What occasion would there be for the use of the word "upholstery" at all?—A. Upholstery can be used for very many things. It comes in contact with very many lines.

Q. I am not asking about the use of upholstery. I am asking about the use of the word "upholstery" in buying and selling transactions.—A. In selling the goods we use the word "upholstery" in describing the use it can be put to in explaining to the buyer.

Q. That means, I suppose, the goods can be put to what you call upholstery uses, such as covering furniture, making of door curtains, portières, window curtains, hangings, etc.?—A. Lots of uses.

Q. Does anything that can be used for those purposes come within the term "upholstery goods"?—A. Some of them.

Q. Some of them?—A. Some of them.

Q. Would all of them? Would not everything that can be used for upholstery purposes be entitled to be called upholstery, in your understanding?—A. Well, upholstery, if you come down to a distinct definition of it, it may mean one thing and it may mean another. It depends on the use entirely.

Q. Within your trade classification of upholstery goods whether it was upholstery goods or not depended upon the use, did it?—A. Entirely.

Q. And that use, among other things, was as hangings or draperies for windows?—A. No.

Q. Wasn't it?—A. No.

Q. What is wrong with it?—A. Because upholstery—if this is the class of goods which you refer to, it is not upholstery.

Q. I am not referring to any class of goods; I am referring to the use of something as window curtains or window hangings.—A. They would not be upholstery, in my opinion.

Q. Is there nothing used for window hangings that is upholstery goods?—A. Not in my opinion of the definition of the word.

Q. If you take a heavy tapestry and hang it at the window, it would not be upholstery?—A. Yes; but you don't.

Q. You have never seen it done?—A. Not as a hanging for the window itself. You see, you have two hangings. People that have two hangings for a window have a drapery and, then, they have a hanging also. The drapery is for the

window decoration and the heavy hanging is for the interior decoration—for the decoration of the room.

Q. Which is true, then, that the trade classifies things as upholstery because they have certain uses, or that the trade applies the word " upholstery " to certain specific goods regardless of use?—A. To my way of looking at it, they have it for a certain use.

Q. Are there not some goods that are called upholsteries regardless of what the buyer is going to do with them?—A. That I can not say.

Q. You are sure that the word " upholstery " is actually used in your orders and in your bills, that particular word, as defining something?—A. Sometimes; yes. It has a meaning in the trade.

This testimony is not persuasive to show the distinction claimed by counsel for the importers.

Without extending this opinion inexcusably, we are convinced, from a careful examination of the record, that the board was quite right in its conclusion that there was a failure to show by the testimony of the importers that there was a commercial meaning differing from the common meaning of the term " upholstery goods," and that they were right in saying that the case depended for its determination upon the common and usual signification of the term " upholstery goods." As this court has already determined the meaning attaching to this term as including those within the present importation, it follows that the decision of the board which reached the opposite conclusion upon the question of law should be *reversed.*