## ST. ELMO CIGAR CO. *v.* UNITED STATES (No. 1571).[1]

EVIDENCE—PRESUMPTION IN FAVOR OF COLLECTOR.

The evidence in this case being in such hopeless conflict that the court is unable to decide any question of law or fact presented, nothing is possible, under the rule that the burden is on the appellant to establish the material allegations of his protest by a convincing preponderance of the evidence, except to affirm the decision of the Board of General Appraisers sustaining the decision of the collector.

United States Court of Customs Appeals, May 23, 1916.

APPEAL from Board of United States General Appraisers, Abstract 37363.

[Affirmed.]

*Frank L. Lawrence* (*Wm. L. Wemple* and *Isadore B. Dockweiler* of counsel) for appellant.

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

---

[1] Reported in T. D. 36492 (30 Treas. Dec., 960).

[Oral argument Apr. 28, 1916, by Mr. Wemple and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal concerns tobacco imported from Cuba and entered for duty at the port of Los Angeles, Cal. Having been the product of the soil of Cuba no question is made in the case as to the discount of 20 per cent from the rates prescribed by paragraph 181 of the tariff act of 1913 by virtue of the Cuban reciprocity treaty (33 Stat. L., 2136), section 4, paragraph B, of the same act.

The paragraphs immediately in question are those following of the tariff act of 1913:

181. Wrapper tobacco, and filler tobacco when mixed or packed with more than 15 per centum of wrapper tobacco, and all leaf tobacco the product of two or more countries or dependencies when mixed or packed together, if unstemmed, $1.85 per pound; if stemmed, $2.50 per pound; filler tobacco not specially provided for in this section, if unstemmed, 35 cents per pound; if stemmed, 50 cents per pound.

182. The term wrapper tobacco as used in this section means that quality of leaf tobacco which has the requisite color, texture, and burn, and is of sufficient size for cigar wrappers, and the term filler tobacco means all other leaf tobacco. Collectors of customs shall not permit entry to be made, except under regulations to be prescribed by the Secretary of the Treasury, of any leaf tobacco, unless the invoices of the same shall specify in detail the character of such tobacco, whether wrapper or filler, its origin and quality. In the examination for classification of any imported leaf tobacco, at least one bale, box, or package in every ten, and at least one in every invoice, shall be examined by the appraiser or person authorized by law to make such examination, and at least ten hands shall be examined in each examined bale, box, or package.

The invoice contained 230 bales of leaf tobacco, 89 of the bales being of mixed fillers and the rest all fillers. The appraiser at the port of Los Angeles returned 16 bales as wrapper tobacco, 31 bales as containing percentages of 15 per cent or less of wrapper tobacco, and the remaining 183 bales as filler tobacco. Duty was assessed accordingly. The importers, however, in their protest limited their claim to 29 bales. This included the 16 bales returned as all wrapper tobacco, and 13 of the 31 bales which were assessed according to the percentage of wrapper tobacco contained in each bale. As to the remaining 18 of the 31 bales aforesaid no protest was made. It appears, however, from the record that they were withdrawn for consumption by the importers, the wrapper duty duly paid on the percentages of wrapper leaves found by the appraiser, and a percentage of it at least was used for wrapping cigars. (R. 26.)

Two issues are presented, the one of law and the other of fact. Primarily, it is contended by the importers, appellants, that the definition of wrapper tobacco under the tariff acts of 1897, paragraph 214, and 1909, paragraph 221, which in this particular were identical, was materially changed by the definition as it appears in the tariff act of 1913, paragraph 182. They read:

### TARIFF ACT OF 1897.

214. The term wrapper tobacco * * * means that quality of leaf tobacco which is suitable for cigar wrappers, * * *.

### TARIFF ACT OF 1909.

221. The term wrapper tobacco * * * means that quality of leaf tobacco which is suitable for cigar wrappers, * * *.

### TARIFF ACT OF 1913.

182. The term wrapper tobacco * * * means that quality of leaf tobacco which has the requisite color, texture, and burn, and is of sufficient size for cigar wrappers, * * *.

The court does not find it necessary upon this record to decide the question of law thus presented. Neither does the court find it necessary to, nor does the court upon this record, approve or disapprove the finding of the board relative to the sizes of articles recognized as a cigar in the trade.

The record is voluminous and there is sharp conflict between the testimony upon the part of the importers and the Government as to every material issue. The burden of proof was upon the importers to establish by a convincing preponderance of the evidence, whatever their legal theory, all the material allegations of their protest; but, upon every such material issue they were met by conflicting and contradictory evidence upon behalf of the Government. Upon this record the board found against the importers. The facts adduced were well within either claimed rule of decision, and their concluding finding is amply supported by evidence in the record.

The rule in such cases is well established. Early in the history of this court, United States *v.* Riebe (1 Ct. Cust. Appls., 19; T. D. 30776), the following doctrine was announced:

We think the proper practice is analogous to that which obtains on appeals in equity cases in the State or Federal courts. That rule has been stated in various ways in the different courts, but the courts all recognize the better opportunities of a trial court to judge of the credibility of witnesses, and hesitate for this reason to disturb the conclusion reached by the trial court. The rule as stated in the Blankensteyn case (56 Fed., 474) is as follows:

The Circuit Court should not undertake to disturb the findings of the board upon doubtful questions of fact, and especially as to questions of fact which turn upon the intelligence and credibility of witnesses who have been produced before the board. But when the finding of fact is wholly without evidence to support it, or when it is clearly contrary to the weight of evidence, it is the duty of the Circuit Court to disregard it.

We think this is a fair and correct statement of the rule which should govern us under the organic statute above quoted.

The Supreme Court concisely stated the rule in Manson *v.* Williams (213 U. S., 453, 457) as follows:

The facts that we have mentioned seem to us to constitute some evidence that the relation between the brothers was a partnership by implied understanding until a

corporation should be formed.    It does not matter that it was not formally recognized or that they may not have used the name to themselves if that is the fair result of what they did understand and intend.    We do not say that we necessarily should have come to this conclusion if the case had been tried before us in the first instance, but upon a pure question of fact the error, if there was one, is not so plain as to call upon us to depart from our usual rule.

See also Stone & Downer Co. *v.* United States (1 Ct. Cust. Appls., 513, 515; T. D. 31534); Carson *v.* United States (2 Ct. Cust. Appls., 105, 109; T. D. 31656); United States *v.* Wertheimer & Co. (2 Ct. Cust. Appls., 454; T. D. 32204); United States *v.* Germain (3 Ct. Cust. Appls., 321, 325; T. D. 32620).

In Lorsch & Co. *v.* United States (5 Ct. Cust. Appls., 93, 94–95; T. D. 34132) this court again applied this criterion, opinion by the presiding judge, stating:

Importers, however, contend that as the general apprasier who wrote the opinion was not present when the testimony was taken the weight to be attached to the finding is thereby lessened.    Conceding this to be in a measure true, yet as it appears that the testimony was taken before General Appraiser McClelland, who concurred in the opinion, we, in such circumstances, attach to the finding considerable weight, and in a doubtful case would give it controlling effect.

With the qualifications hereinbefore noted the decision of the Board of General Appraisers is *affirmed*.