LA MANNA, AZEMA & FARNAN *v.* UNITED STATES (No. 2799)[1]

1. COMMERCIAL DESIGNATION—DESCRIPTIVE TERMS.

   The rule that a tariff term may have a commercial meaning different from its common one applies to descriptive as well as substantive terms.   *American Express Co.* v. *United States,* 10 Ct. Cust. Appls. 275.

2. SAME—EVIDENCE—SUFFICIENCY.

   The rule that the decision of the court below will not be disturbed unless clearly contrary to the weight of the evidence applies to findings on commercial designation.   Where a number of qualified witnesses testified to a certain commercial designation, and another number testified that they had never heard of it, the finding in favor of the designation is affirmed.

3. "WHOLE PIMIENTOS,"—COMMERCIAL DESIGNATION.

   While (as held in *Von Bremen, Asche & Co.* v. *United States,* 12 Ct. Cust. Appls. 406) pimientos which have had their skins, pulps, seeds, and stem ends removed are not whole, proof that they are so known commercially effects their classification as such, under paragraph 779, Tariff Act of 1922.

---

United States Court of Customs Appeals, December 14, 1926

' APPEAL from United States Customs Court, T. D. 41688

[Affirmed.]

*Marlow & Hines* for appellants.

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham* and *Ralph Folks,* special attorneys, of counsel)`, for the United States.

*Marion De Vries* and *Jesse P. Crawford* (*De Vries & Davis* of counsel) *amici curiae.*

[Oral argument October 28, 1926, by Mr. Hines, Mr. Folks, and Mr. Crawford]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Appellant entered three importations of canned Spanish pimientos, at the port of New York, under the Tariff Act of 1922. These were returned for duty as whole pimientos, under paragraph 779, at 6 cents per pound and were claimed by appellant, in its protest, to be dutiable at 35 per centum ad valorem, as prepared vegetables, under paragraph 773, of said act. The material portions of said paragraphs are as follows:

773. Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; * * * 35 per centum ad valorem.

779. Spices and spice seeds: * * * whole pimientos, packed in brine or in oil, or prepared or preserved in any manner, 6 cents per pound.

On the hearing before the court below, and from an inspection of the samples, it is shown that the pimientos imported are a species of pepper grown in Spain, having a very succulent pod, a sweet and palatable flavor, and becoming of a red color when ripe. They are picked when ripe, the skin is removed by roasting, and a portion of the pimiento surrounding the stem is, together with the pulp and seeds, excised. The remaining portion, being the only part suitable for human food, is packed in cans and then goes into commerce.

It was contended by the importer below and is likewise insisted here, that, in view of the physical condition of the pimientos, as above stated, they can not, under the authority of *Von Bremen, Asche & Co.* v. *United States,* 12 Ct. Cust. Appls. 406, be classified as "whole pimientos." The Government, to meet this contention, has called in the court below a large number of witnesses in an. effort to establish that while, as a matter of fact, the pimientos imported are not whole pimientos, they were known, in the wholesale trade, throughout the United States, at the time of, and for a considerable period before, the enactment of the Tariff Act of 1922, generally, uniformly, and definitely, as whole pimientos. On the issue thus presented, many witnesses were called on both sides.

After a consideration thereof, the court below rendered judgment sustaining the classification made by the collector and stated, in its decision filed, in part, as follows:

> On the part of the Government several witnesses were sworn who were large dealers in this commodity, from California to the eastern States. They had bought and sold pimientos in wholesale quantities in every State of the Union. They testified positively that they were known in the trade as "whole pimientos" as distinguished from the pieces of pimiento of less value also dealt in by them. This positive testimony was not negatived in terms. They might have been handled and spoken of by some other name meaning the same thing. We are satisfied from the testimony that commercially throughout the United States they were known as whole pimientos, distinguished from any other whole pepper known to the trade.

From that judgment the importer has appealed.

In *Von Bremen, Asche & Co.* v. *United States, supra,* this court had before it exactly the same character and kind of merchandise involved in the case at bar. In that case, as here, the goods were classified under said paragraph 779 as whole pimientos and were claimed to be dutiable under said paragraph 773 as prepared vegetables. This court there held, speaking through Barber, J.:

> Regardless of this conjecture, however, we advance to the consideration of what was actually meant by the term "whole pimientos." This must be determined by the ordinary meaning of the words used, and as to that, we think there can be little doubt.
>
> The whole article is that article in its entirety. We early learned that "the whole is equal to the sum of all its parts," the corollary of which necessarily is that the whole diminished by some of its parts is not the whole.
>
> If Congress had intended by the new provision to cover parts of pimientos as well as whole ones, it were easy to have said so. It will be presumed to know that such parts of pimientos as are here involved would be dutiable as vegetables prepared or preserved under the opinion of this court in the Austin, Nichols case; and if it intended to exclude the same from the effect of that decision apt and unambiguous language was at hand with which to express that intent.
>
> The view most favorable to the Government as to the meaning of the term "whole pimientos" is that it is ambiguous, and so conceding, without admitting, the importer is entitled to the benefit of the doubt as to its interpretation.

It will be observed, from the language quoted, that this court, in the *Von Bremen, Asche & Co.* case, *supra,* was determining the matter before it strictly according to the ordinary meaning of the words "whole pimientos" as found in the statute. We have again examined carefully the record in the case cited and find that there was an entire absence of any proof therein as to commercial designation; in fact, counsel in that case expressly disavowed any purpose to introduce or rely upon proof of any such commercial designation. We are satisfied the conclusion reached in the *Von Bremen, Asche & Co.* case, in view of the state of the record therein, was sound, and, unless such commercial designation has been established here as necessitates a different conclusion, it should be followed.

It first becomes material to inquire whether the words "whole pimientos" found in said paragraph 779, must be taken according to their ordinary meaning, or whether they are subject to proof of commercial designation.

The word "whole" is a descriptive term and no reason is apparent to us why its meaning is not capable of being defined by proof of commercial practice and custom. The leading case on this subject is the familiar one of *200 Chests of Tea*, 9 Wheat. 428. There the act of April 27, 1816, under which the particular cargo of tea involved was imported, levied a duty on "bohea tea." The claim was made that the tea was, in fact, not bohea tea, but congo tea. Mr. Justice Story, speaking for the court, held that, whatever the tea might, in fact, be, the true inquiry was to ascertain what was the designation under which it was bought and sold in the trade. That case has been uniformly followed, both by the Supreme Court and by this court. In *American Express Co.* v. *United States*, 10 Ct. Cust. Appls. 275, this court exhaustively reviewed the authorities. A reference to the opinion filed in that case will obviate the necessity of further citing the authorities here. The case last cited is ample authority to support the view that not only *eo nomine* designations but also descriptive terms, contained in a statute, must be held to be susceptible to proof of commercial designation, unless it is manifest, from the language of the act itself, that it was the congressional intent that the words of the statute must be understood according to their ordinary meaning.

Here, there is no such congressional intent manifested. If then, the term "whole pimientos" is susceptible of proof of commercial designation, it only remains to inquire whether the record before us shows that the articles imported were, at and before the time of the enactment of the Tariff Act of 1922, commercially known and designated as "whole pimientos." The court below held, as we have seen, that proof of such commercial designation had been established. In such cases we have held, rather because of the necessities of the case and because of the utter impracticability of any other holding, that commercial designation may be established by a preponderance of the evidence. *Meyer & Lange et al.* v. *United States*, 3 Ct. Cust. Appls. 247 (250); *United States* v. *Borgfeldt*, 1 Ct. Cust. Appls. 255; *United States* v. *Snow's U. S. S. Ex. Co.*, 6 Ct. Cust. Appls. 477. It is a familiar rule, that this court will not disturb the finding of fact by the court below unless it affirmatively appears that it was either without evidence to support it or was clearly against the weight of the evidence. *United States* v. *Germain*, 3 Ct. Cust. Appls. 321; *Carson* v. *United States*, 2 Ct. Cust. Appls. 105; *St. Elmo Cigar Co.* v. *United States*, 7 Ct. Cust. Appls. 153.

On the part of the Government, in the court below, 13 witnesses were called and examined, 10 of whom testified, in effect, that the imported pimientos were such as had been commercially designated as "whole pimientos," prior to the enactment of the Tariff Act of 1922, and that such designation was general, definite, and uniform, in the wholesale trade. On the other hand, the importer called nine witnesses, at least eight of whom were engaged in the wholesale trade, and who testified that they had never heard the term "whole pimientos" used in the trade prior to the enactment of the Tariff Act of 1922. There was also uncontroverted evidence offered that the term "pimiento" was one applied to Spanish peppers exclusively, and that prior to the enactment of said tariff act, no pimientos were imported into this country except with the pulp and seeds removed.

The court below heard this testimony and upon a consideration of it, found that the Government had sustained the burden of establishing a commercial designation of the imported pimientos as "whole pimientos." The trial court had the opportunity of hearing the witnesses testify and of observing their demeanor while testifying, a privilege which we have not had. While it is somewhat difficult to understand how a commercial designation may exist, uniformly, generally, and definitely, in view of this record, nevertheless we can not say that the judgment of the court below is either without evidence to support it or is clearly contrary to the weight of the evidence.

Therefore the judgment of the Customs Court should be, and is, *affirmed.*