LAMONT, CORLISS & CO., PONDS EXTRACT CO. *v.* UNITED STATES
(No. 3371)[1]

United States Court of Customs and Patent Appeals, March 2, 1931

*B. A. Levett* for appellants.

*Charles D. Lawrence,* Assistant Attorney General (*James R. Ryan,* special attorney, of counsel), for the United States.

*De Vries, Crawford & McCook* (*Jesse P. Crawford* of counsel) *amici curiae.*

[1] T. D. 44682.

[Oral argument February 4, 1931, by Mr. Levett, Mr. Lawrence, and Mr. Crawford]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves the classification of an importation entered as stearic acid and classified and assessed for duty by the collector under paragraph 1 of the Tariff Act of 1922 as "all other acids: * * * not specially provided for," at 25 per centum ad valorem. Paragraph 1 reads as follows:

### SCHEDULE 1.—CHEMICALS, OILS, AND PAINTS

PARAGRAPH 1. Acids and acid anhydrides: Acetic acid containing by weight not more than 65 per centum of acetic acid, three-fourths of 1 cent per pound; containing by weight more than 65 per centum, 2 cents per pound; acetic anhydride, 5 cents per pound; boric acid, 1½ cents per pound; chloroacetic acid, 5 cents per pound; citric acid, 17 cents per pound; lactic acid, containing by weight of lactic acid less than 30 per centum, 2 cents per pound; 30 per centum or more and less than 55 per centum, 4 cents per pound; and 55 per centum or more, 9 cents per pound: *Provided*, That any lactic-acid anhydride present shall be determined as lactic acid and included as such: *And provided further*, That the duty on lactic acid shall not be less than 25 per centum ad valorem; tannic acid, tannin, and extracts of nutgalls, containing by weight of tannic acid less than 50 per centum, 4 cents per pound; 50 per centum or more and not medicinal, 10 cents per pound; 50 per centum or more and medicinal, 20 cents per pound; tartaric acid, 6 cents per pound; arsenic acid, 3 cents per pound; gallic acid, 8 cents per pound; oleic acid or red oil, 1½ cents per pound; oxalic acid, 4 cents per pound; phosphoric acid, 2 cents per pound; pyrogallic acid, 12 cents per pound; *stearic acid, 1½ cents per pound; and all other acids and acid anhydrides not specially provided for, 25 per centum ad valorem.* [Last italics ours.]

The merchandise is admitted to be identical with the merchandise involved in *Lamont, Corliss & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 488, T. D. 43224, and the protests in the former case, as far as the issues are involved here, are identical with the protests at bar. In the trial of the former case, importers' contention was limited to the question as to whether or not the merchandise was commercially known as stearic acid. No question was there raised as to the applicability to the merchandise of the provision "all other acids * * * not specially provided for," nor was the question of similitude raised.

Nearly 20 witnesses testified for the importers or the Government, in the former case, on the question of commercial designation. The court below in that case found against the importers' contention that they had proved the merchandise was commercially stearic acid, and overruled the protests. This court, upon appeal, after an exhaustive study of the record, stated the issue to be: "Was the imported merchandise definitely, uniformly, and generally designated in the trade and commerce of the United States as 'stearic acid' at

and prior to the enactment of the Tariff Act of 1922? If it was, it is of no consequence whether it was, in fact, stearic acid. *La Manna, Azema & Farnan* v. *United States*, 14 Ct. Cust. Appls. 289, T. D. 41908, citing *200 Chests of Tea*, 9 Wheat. 428."

In the course of the opinion, the court, speaking through Judge Hatfield, said:

\* \* \* Obviously, when 13 qualified commercial witnesses, who for many years have been dealing extensively in stearic acid in the principal markets of the country, testify that, in their experience, the trade designated as stearic acid only such products as were made of certain materials and conformed to certain specifications, and that the imported product, because of its failure to meet these requirements, could not be used as and would not be accepted as a good delivery for stearic acid, and that it was not so designated in the trade, such evidence, if believed by the trial court, would be sufficient to sustain a finding that the imported product was not *definitely, uniformly, and generally* designated in the trade as stearic acid. \* \* \* [Italics quoted.]

\* \* \* \* \* \* \*

From a careful consideration of the record, we are satisfied that the finding of the court below is not contrary to the weight of the evidence. \* \* \*

In the case at bar, appellants argue that the court was wrong in its conclusion as to the effect of the commercial proof and contend that this court, in *United States* v. *Schoemann & Mayer*, 17 C. C. P. A. (Customs) 349, T. D. 43778, in announcing the law on commercial designation, has disapproved of the principles laid down in *Lamont, Corliss & Co. et al.* v. *United States, supra,* and that under the doctrine of the *Schoemann & Mayer* case, *supra,* the proof in the former *Lamont* case, which is made part of the record in the instant case, establishes commercial designation of the term "stearic acid" to be in accordance with appellant's contention. Appellants, therefore, in the trial below of the instant case, presented no new testimony, but introduced the record in the former case together with the appraiser's report in the entries involved in the case at bar and here take the position that the court should overrule its finding on commercial designation and hold that the record in the instant case establishes that appellants have proved that their merchandise is commercially stearic acid and, therefore, dutiable under the *eo nomine* provision for stearic acid at 1½ cents per pound.

In addition to the foregoing contention, appellants urge that if the merchandise is not stearic acid commercially (it seems to be conceded by both sides that it is not stearic acid in the common understanding), it is not any kind of acid at all and does not fall under the provision for "all other acids \* \* \* not specially provided for" and is, therefore, not enumerated and. is dutiable by similitude under the *eo nomine* provision for stearic acid. As an alternative claim it is urged that if it is neither dutiable directly as stearic acid, nor as stearic acid by similitude, nor as "all other acids \* \* \* not

specially provided for," it is then a nonenumerated article and dutiable under paragraph 1459 at 10 or 20 per centum ad valorem.

The majority of the court below, Justice Brown dissenting, held as follows: "The question of commercial designation, and as to whether or not it is stearic acid is, on the record presented, settled, and the issue is *res adjudicata*," and overruled the protest.

The Government and the *amici curiae* concede in this court that under the authority of *United States* v. *Stone & Downer Co.*, 12 Ct. Cust. Appls. 557, T. D. 40784, reversed on another question in 274 U. S. 225, the issue presented here is not controlled by the doctrine of *res adjudicata* on account of this court's decision in *Lamont, Corliss & Co., supra*, but that our former decision is *stare decisis* of the issue involved, and for their authority rely upon *Burstein & Sussman* v. *United States*, 16 Ct. Cust. Appls. 282, T. D. 42871.

Our former decision in *Lamont, supra*, is not *res adjudicata* of the issue here. *United States* v. *Stone & Downer Co., supra*. Under the circumstances at bar we agree with the contention of the Government and *amici curiae* that our former decision is *stare decisis* of that issue here. Of course, if, as appellants contend, this court has, in the *Schoemann & Mayer* case, *supra*, in effect, overruled its decision in *Lamont, Corliss & Co., supra*, the appellants would be entirely justified in contending for a reconsideration of the commercial testimony in the case at bar, although it is identical with that in the former case. We do not agree with the contention of importers that the *Schoemann & Mayer* case overrules the *Lamont, Corliss & Co.* case, *supra*, or in any respect modifies our conclusions as to the law of commercial designation as announced in the *Lamont* case. The difference, if any, in the two opinions, in this respect, is in form of expression rather than in thought.

We, therefore, hold on the instant record, as we held on the former record, that "we are satisfied that the finding of the court below is not contrary to the weight of the evidence."

We now recur to the question as to whether the merchandise was properly assessed by the collector under the provision for "all other acids * * * not specially provided for." If properly assessed, the similitude and nonenumerated claims of appellant need not be given further consideration. *United States* v. *Stouffer Co*, 3 Ct. Cust. Appls. 67, T. D. 32351. In the argument of the case before us, the proposition that the merchandise at bar might be a chemical mixture as provided for in paragraph 5 was referred to. If, however, it is to be held dutiable under the "all other acids" provision, this proposition needs no consideration here.

The importation, entered as stearic acid, is made, according to the undisputed testimony, from the following ingredients—

* * * about 50 per centum of palm oil and/or Chinese vegetable tallow and/or cocoa butter fatty acids; the remaining 50 per centum is made of the

other fats named. It is immaterial what proportion the palm oil, Chinese vegetable tallow, or cocoa butter fatty acids may bear to each other, so long as in the aggregate they constitute approximately 50 per centum. It is also immaterial what proportion the other fats mentioned bear to each other, so long as they constitute 50 per centum in the aggregate. The proportions vary following market conditions.

Concerning the process of distillation used in the manufacture of the importation at bar, the undisputed evidence shows the following:

This process consists of mixing together palm oil and tallow. This mixture is then rendered anhydrous by heat, and then concentrated sulphuric acid is added. The effect of the sulphuric acid is to split up the mixed fats into free acids and glycerine. The free fatty acids are then drawn off and distilled to remove impurities. After being purified the free fatty acids are allowed to cool to the solid state, and are then subjected to hydraulic pressure to remove the oleic acid. The product is first pressed at normal temperature and then at higher temperature. All stearic acid is subjected to these two pressures mentioned and the product so produced constitutes our "prime" brand. Finer grades of stearic acid are produced by further pressings. Our brand "superior" is subjected to one further pressure and the "extra superior" to another further pressure. The effect of these further pressings is to further remove any oleic acid remaining, resulting in a whiter finished product.

The Government chemist, reporting on the analysis of the merchandise at bar, closes his report by the following:

| *Calculated composition* | Per Centum |
|---|---|
| Oleic or isooleic acid | 23. 3 |
| Stearic acid | 26. 0 |
| Palmitic acid | 50. 7 |

The chemist's reports showed that none of the samples of the imported merchandise had a needle-point crystalline structure. The melting of the various samples ranged from 119.7° to 126.4° F., and the iodine values from 10.3 to 27.2.

Importers' counsel cleverly argues that if the merchandise at bar is not stearic acid by reason of the fact that it does not crystalize in needles, and does not have certain other characteristics as to melting point, etc., which the Government witnesses claim are essential before it is designated in the trade as stearic acid, it is not in fact an acid at all; but that since it is similar in texture, quality, or use to stearic acid, it should be held to be dutiable under the *eo nomine* provision by similitude. Appellants' attorney argues further that it is not an acid in the ordinary sense, quotes Webster's Dictionary definition of an acid, points out that there is no commercial proof of the meaning of the word "acids," and states that the process of manufacture and its appearance, being a "fairly white waxy-like substance," shows that it is not an acid but that it is a substance that "contains acids" and "in its imported condition is more than an acid."

The definitions of the three acids mentioned in the chemist's report are given in Webster's Dictionary as follows:

Oleic acid, $C_{17}H_{33}CO_2H$, an acid of the acrylic acid series found in the form of olin in certain animal and vegetable fats and oils, such as sperm oil, olive oil, etc.

At low temperatures the acid is crystalline, but it melts to an oily liquid above 14° C.

Palmitic [acid]. *Chem.* Designating or pertaining to, a white, crystalline, fatty acid, $C_{15}H_{31}CO_2H$, occurring free in palm oil, as the cetyl ester in spermaceti, as the myricyl ester in beeswax, and as the glyceryl ester (palmitin) in a large number of fats. It melts at 62° C. Palmitic acid is also made artificially from cetyl alcohol and from oleic acid. It is used in large quantities as a material for candles.

Stearic acid. *Chem.*, a monobasic fatty acid, $C_{18}H_{36}O_2$, obtained by saponification of stearin, in white crystalline scales, soluble in alcohol and ether. It melts to an oily liquid at 69° C. (156° F.). It is used for making candles, usually with the addition of paraffin. The stearic acid of commerce is a mixture of stearic and palmitic acids.

The definition of the word "acid" is, in Webster's Dictionary, as follows:

2. *Chem. a.* Any one of a class of substances which typically are soluble in water, sour in taste, and redden vegetable blues, as litmus. (1) In the older chemistry, an oxide of a negative element or radical which forms salts by direct union with bases; as, sulphuric *acid*, $SO_3$ unites with the base calcium oxide CaO, to form calcium sulphate, $CaO.SO_3$. (2) According to modern views, a compound containing hydrogen capable of being replaced by positive elements or radicals to form salts, or, in terms of the dissociation theory, a compound that dissociates in aqueous solution with the production of hydrogen ions; as, sulphuric *acid*, $H_2SO_4$, in aqueous solution reacts with the base calcium hydroxide, $Ca(OH)_2$, to form calcium sulphate, $CaSO_4$, and water.

We can not tell from this record with any degree of certainty whether the merchandise at bar, which admittedly is an acid substance and contains at least three closely-related acids, is or is not in fact, in its imported condition, an acid as that term is ordinarily understood. The collector found that it was. There is nothing in this record or in any of the authorities examined by us which would justify us in rejecting the finding of the collector. As far as this record shows, this issue was not presented fully to the court below and nothing has been furnished us which is very helpful on the subject. But, we conclude that without reference to whether the substance at bar is or is not in the common acceptance *an acid*, it was so regarded by Congress in the enactment of the Tariff Act of 1922, and that it should receive classification under the provision for "all other acids * * * not specially provided for."

The paragraph is headed by the term "acids" and names therein a number of acids which are mixtures of several kinds of acid substances, and we think the term "all other acids" should be given no narrower meaning in this respect than that which is indicated by the inclusion of such mixtures in the body of the paragraph. Furthermore, in the Tariff Act of 1913, there was no *eo nomine* provision for stearic acid or oleic acid and in the acid paragraph there was a provision for "all other acids and acid anhydrides not specially provided for," which is identical with the provision at bar. Some of the acids, in many respects similar to the merchandise at bar, found classifica-

tion under the provision for "all other acids," which fact was called to the attention of Congress by the report of the United States Tariff Commission submitted to the Committee on Ways and Means of the House of Representatives on March 28, 1921.

Paragraph 1 of the Tariff Act of 1909 was identical with the Tariff Act of 1913 as respects the question in'volved here. Paragraph 1 of the Tariff Act of 1897, under schedule "A," "Chemicals, Oils, and Paints," and headed by the term "ACIDS," contained no *eo nomine* provision for oleic or stearic acid, but did contain a provision for "all other acids not specially provided for in this Act." Stearic acid found classification under this provision, although certain grades of stearic acid admittedly contained other kinds of acids. In T. D. 30334, G. A. 6977, the Board of General Appraisers held stearic acid dutiable at 25 per centum ad valorem under the provision for "all other acids not specially provided for" in paragraph 1, Tariff Act of 1897, and said: "In behalf of the importers it is admitted that the article in dispute is chemically an acid."

So, therefore, without regard to our views as to whether or not a mixture of three acids may be said to be an acid, in a strict and definite chemical sense, we hold that Congress intended that merchandise like that at bar, when not more specifically provided for elsewhere, should be regarded as falling within the provision "and all other acids  *  *  *  " for tariff duty purposes, and the judgment of the United States Customs Court is *affirmed*.