ARNHOLD & CO., INC. *v*. UNITED STATES (No. 3680)[1]

UNITED STATES *v*. ARNHOLD & CO., INC. (No. 3684)

---
[1] T. D. 47036.

United States Court of Customs and Patent Appeals, April 23, 1934

*Barnes, Richardson & Halstead* (*Samuel M. Richardson* and *Albert MacC. Barnes* of counsel) for Arnhold & Co., Inc.

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

[Oral argument February 16, 1934, by Mr. Barnes and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

These are cross-appeals, on the part of importer and the Government, respectively, from a judgment of the United States Customs Court, holding certain dogskins dutiable by similitude to mats of dogskin, under paragraph 1420 of the Tariff Act of 1922, the full text of which reads:

PAR. 1420. Furs dressed on the skin, excepting silver or black fox furs, not advanced further than dyeing, 25 per centum ad valorem; plates and mats of dog and goat skins, 10 per centum ad valorem; manufactures of furs, excepting silver or black fox, further advanced than dressing and dyeing, prepared for use as material, joined or sewed together, including plates, linings, and crosses, except plates and mats of dog and goat skins, and articles manufactured from fur, not specially provided for, 40 per centum ad valorem; silver or black fox skins, dressed or undressed, and manufactures thereof, not specially provided for, 50 per centum ad valorem; articles of wearing apparel of every description partly or wholly manufactured, composed wholly or in chief value of hides or skins of cattle of the bovine species, or of dog or goat skins, and not specially provided for, 15 per centum ad valorem; articles of wearing apparel of every description wholly or in part manufactured, composed wholly or in chief value of fur, not specially provided for, 50 per centum ad valorem.

The merchandise is described in the appraiser's answer to protest as "dogskins dressed." The collector of customs classified it under the first portion of paragraph 1420, *supra*, as furs dressed on the skin, assessing duty at 25 per centum ad valorem.

The protest of the importer made various alternative claims, but, as finally presented before the trial court and this court, its contention is that the merchandise is either admissible free of duty under paragraph 1579 of the Tariff Act of 1922, or dutiable at only 10 per centum by similitude (by way of paragraph 1460 of said tariff act) to "plates and mats of dog   *   *   *   skins", provided for in paragraph 1420, *supra*, the latter contention being the one sustained by the trial court.

Paragraph 1579 reads:

PAR. 1579. [Free] Furs and fur skins, not specially provided for, undressed.

The Government on its part contends that the merchandise is classifiable and dutiable as held by the Collector of Customs.

It is agreed that the merchandise is of the same character as that which was involved in the case of *United States* v. *Bernstein & Sons*, 19 C.C.P.A. (Customs) 59, T.D. 44895, in which case a rehearing was granted, the decision upon rehearing, with dissenting opinion, appearing in 19 C.C.P.A. (Customs) 242, T.D. 45340.

It was virtually held in the *Bernstein* case, *supra*, that the issue was controlled by the decision of this court in the case of *Transport Co.* v. *United States*, 15 Ct. Cust. Appls. 89, T.D. 42159, wherein, affirming a decision of the United States Customs Court, it was held that certain kid skins were dutiable as furs dressed on the skin, under the first portion of paragraph 1420, *supra*, and that the similitude doctrine was not applicable to render them assessable under the 10 per centum provision for mats of goatskin.

As the *Transport Co.* and the *Bernstein & Sons* cases, *supra*, were presented, substantially the sole issue (aside from a question of commercial designation appearing in the latter case) was that of the applicability of the doctrine of similitude, and importers there relied principally upon the rule of legislative adoption of administrative practice, with a suggestion of the possible adoption of judicial interpretation. No claim that the merchandise was duty free seems to have been suggested. Certainly no such claim was pressed, or even argued. The dissenting opinion in the *Bernstein* case, *supra*, was based solely upon the view of the judges participating therein that the importers' contentions were sustained by the rule upon which they relied.

In both the *Transport Co.* and *Bernstein & Sons* cases, *supra*, the opinions of this court recognized, and made comment upon, the fact that the construction of the statute there made resulted in imposing a higher duty upon the kid skins and dogskins, respectively involved, than is provided for articles manufactured from such skins. It was fully appreciated that this produced an incongruous result, but it was said, to use the language of the *Transport Co.* case, *supra*, "many seeming incongruities appear in tariff statutes."

The Government has here directed attention to the fact that application was made to the Supreme Court of the United States for writ of certiorari in the *Bernstein & Sons* case, *supra*, which application was denied, 285 U.S. 554. However, no reasons were assigned for the denial, and the Supreme Court has said: "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." *United States* v. *Carver*, 260 U.S. 482, 490.

It was made quite clear in the opinions in the *Transport Co.* and *Bernstein & Sons* cases, *supra*, that this court's decisions were based upon the respective records and evidence there respectively presented. Were the record and evidence in the instant case the same as in those cases, we should, of course, be bound by those decisions, but a new record with new testimony, covering many phases not there covered, is here before us, and a new issue—that of the merchandise being entitled to free entry—is tendered along with the alternative claim of classification by similitude, and it is, therefore, required that we review the subject matter in the light of this new and different record, having in mind all applicable rules of law announced in those cases.

The prevailing opinion in the *Bernstein & Sons* case, *supra*, specifically held that proof as to the merchandise being excluded, by commercial designation, from "furs" or "furs dressed on the skin," was immaterial. The opinion added, in substance, that, even if held material, importers there had failed to establish such fact, but the holding as to its being immaterial was definite and clear. The doctrine of *stare decisis*, so far as that particular question is concerned, is here applicable, and the merchandise must be regarded as "furs," and, if dressed, as "furs dressed on the skin." This of necessity eliminates the applicability of paragraph 1666 of the Tariff Act of 1922, cited in importer's protest and brief, but not seriously insisted upon. The merchandise is not raw skins.

That opinion does not, however, hold evidence respecting the commercial meaning of the term "dressed" to be immaterial, nor was the question of whether, as furs, they were dressed within the common meaning of the term there raised. The record in the instant case contains eleborate testimony upon this subject. There is thus presented an issue not presented in the prior cases cited, *supra*, which cases are contended by the Government to be here controlling.

There are parts of the opinion of the trial court in this case which are not clear to us, and which counsel for the respective parties state is not clear to them. There is no definite finding by that tribunal as to whether the dogskins involved were "dressed," or "undressed," in either the common or commercial meaning of those terms, but, as we interpret its holding, it is that (under the rule

announced by this court in *La Manna, Azema & Farnan* v. *United States*, 14 Ct. Cust. Appls. 289, T.D. 41908, to the effect that commercial designation may be established by a preponderance of the evidence) importer has here established a commercial understanding of the terms "dressed furs" and "furs dressed on the skin," which excludes the merchandise involved.

Under the definite statement of the prevailing opinion of this court in the *Bernstein & Sons* case, *supra*, relative to the immateriality of such testimony, we cannot here hold otherwise than that the trial court's decision upon that phase of the case, if we have correctly interpreted that part of the opinion, is erroneous, but it does not necessarily follow that its judgment should be reversed, if that judgment be justified upon other grounds.

As we view the case, upon the record now presented, the testimony respecting the question of whether these dogskins, *treating them as furs*, are "dressed" or "undressed," is material and proper to be considered, and the evidence bearing upon this has received our careful scrutiny and analysis, with the result that we conclude it to have have been shown that the merchandise may not properly be held to fall definitely within the proper meaning of either "dressed" or "undressed," either commercially or within the common meaning of the terms. In other words, we think the preponderance of the evidence leads to the conclusion that they are *partly* dressed, and only partly dressed, and hence are not properly classifiable as free under paragraph 1579, *supra*, as "undressed furs" or "undressed fur skins," nor under the first part of paragraph 1420, *supra*, as "furs dressed on the skin."

The record is quite voluminous, importer having called and examined 19 witnesses upon various phases of the controversy, and the Government having called and examined 10 witnesses. Samples of the merchandise are in evidence, together with certain illustrative exhibits.

The importations came from China, and it is stated that upon each of the skins, as imported, there were stamped the words "Dressed in China." There is testimony, practically uncontradicted, which shows that, as to the importations involved, all that was actually done in China was to scrape the flesh and blood from the pelts and place them in the sun to dry, after which they were immersed in water and kaolin flour, and then dried again. Certain of the witnesses say that the processes applied in China were simply for their preservation during transportation, but almost universally the skins are referred to, even by the witnesses for importer, as being tanned, and at least nine of the witnesses describe them as being "partly dressed," using that expression.

There is testimony by one of the witnesses, who was a dyer of furs, called by the Government, to the effect that out of some 100,000 dog-skins sent per year to his plant for dyeing, about 25 per centum were dyed and sent back without any further processing. It seems to be clear from the testimony of this witness, however, that *before* dyeing them they must at least be drummed in sawdust. It is fairly infer-able, we think, from some of the testimony, that, in some instances, skins which happen to be of the right color or shade may be used without being dyed. But as to all, whether or not they undergo a dyeing process before use, we think that the great weight of the evidence shows that the skins, as imported, must, before being used, undergo processes additional to those shown by this record to have been applied in China to the importations before us. Generally speaking, these additional processes—designated by some of the witnesses as "redressing"—consists in removing the dust, "pickling" the pelts, applying greases, such as butterine, and drumming them with sawdust, to remove the surplus grease. All these steps are generally taken before the dyeing process, which seems to be distinct from the dressing process, takes place.

The dogskins being neither dressed nor undressed, we regard the doctrine of similitude as being properly applicable in classifying the merchandise pursuant to the provisions of paragraph 1460. It is shown that the dogskins involved have the same uses as plates and mats of dogskins provided for at 10 per centum ad valorem in paragraph 1420, *supra*.

Accordingly, the judgment of the United States Customs Court is *affirmed*.