UNITED STATES *v.* ALLEN FORWARDING Co. (No. 4796)[1]

United States Court of Customs and Patent Appeals, May 27, 1954

[1] C. A. D. 566

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

*Sharretts, Paley & Carter* (*Howard Clare Carter and Joseph F. Donohue* of counsel) for appellee.

[Oral argument April 7, 1954, by Mr. FitzGibbon and Mr. Donohue]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

JACKSON, Judge, delivered the opinion of the court:

The Government has appealed from a judgment of the United States Customs Court, First Division, given pursuant to its decision, C. D. 1540, sustaining a protest of appellee. It appears that the merchandise, the classification of which gives rise to the present issue, consists of leather described on the consular invoices which accompany the entries as "Plain Boarded Sides" and as "Black Sides."

The Collector of Customs at the port of Philadelphia assessed duty against the importation at the rate of 15 per centum ad valorem under the provision of paragraph 1530 (d) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for "Leather * * * grained." The merchandise was claimed by appellee to be properly dutiable at the rate of 12½ per centum ad valorem under the provision of the said paragraph (b) (4) of the Act, as so modified, for "upper leather made from * * * kip skins; * * * not cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear." The pertinent portions of the involved paragraph, as amended, read as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1530 (b) (4)__ | Leather (except leather provided for in subparagraph (d) of paragraph 1530, Tariff Act of 1930), made from hides or skins of cattle of the bovine species:<br>Side upper leather (including grains and splits), * * *, and leather made from calf or kip skins, rough, partly finished, or finished, * * *;<br>Side upper grains and finished splits (except wax splits), and upper leather made from calf or kip skins; all the foregoing, not cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear_____ | 12½% ad val. |
| 1530 (d)_____ | Leather of all kinds, grained, printed, embossed, ornamented, or decorated, in any manner or to any extent * * * all the foregoing by whatever name known, and to whatever use applied_____ | 15% ad val. |

The record and contentions of the appellee show that the issue was confined to the single question of whether the importation is "grained" within the meaning of that term as used in the involved paragraph.

It appears from the record that the imported leather was produced from kip skins, finished or partly finished, and, when imported, was not cut or manufactured in any way into forms or shapes suitable for conversion into footwear.

It appears that the processes to which the raw skins were subjected consisted of washing, dehairing, tanning, stretching, boarding, and placing of finish on the top of the treated skin. The collector undoubtedly classified the merchandise as grained leather because of the boarding process.

The process of boarding, which may be performed by hand or machine, consists of rubbing the surface of the leather with a board. When the boarding is done on the pore or "grain" side of the leather, it appears that the effect is to accentuate and raise the natural grain of the skin, and it was so held by this court within the common meaning of the term in the case of *United States* v. *John B. Stetson*

*Co.*, 21 C. C. P. A. (Customs) 3, T. D. 46319. In that case, among other things, it was stated as follows:

* * * Here we find an enumeration of several kinds of leather which are to be classified thereunder, and these are designated *eo nomine*: Grained leather, printed leather, embossed leather, ornamented leather, and decorated leather. * * *

Boarding of leather, it seems, may be so accomplished as to produce merely a softening of the leather so as to facilitate its further manufacture.

It was admitted by counsel for the appellee that the instant merchandise had been boarded but one of the alternative contentions was that the boarding did not accentuate the natural grain of the leather but merely made it smoother and more pliable.

The trial court in its decision held that the evidence in respect to making a precise determination as to whether the imported merchandise had been "grained" within the common meaning of that term, as set out in the *Stetson* case *supra*, was unsatisfactory.

There were no samples of imported merchandise before the trial court but several pieces of leather were placed in evidence by counsel for appellee as representative of the importation.

A careful examination of the record convinces us that the principal aim of counsel for appellee was to prove that the involved leather had a commercial designation which differed from the common meaning of "grained" leather.

The witnesses for appellee all stated that the term "grained" had reference to leather on which a grain or grained effect was made by printing or embossing the leather.

The trial court held that commercial designation had been properly established and, for that reason, ordered judgment for the appellee.

The issue presented here in the brief of counsel for the Government is stated to be a question of law. They contend that paragraph 1530 (d) of the Act, as modified by the Trade Agreement, is not susceptible to the doctrine of commercial designation. Counsel for appellee in their brief allege that the question of susceptibility, as contended for by counsel for the Government, may not properly be considered by us for the reason that it was not raised at the trial. However, on oral argument counsel for appellee conceded that we may consider that question *sua sponte*.

The doctrine of commercial designation is no more than one of the rules of construction and may be called upon only for the purpose of ascertaining the true intention of the Congress with reference to particular legislation and so as not to vitiate the purpose of the statute as clearly expressed in its language.

We noted in the case of *I. Shalom & Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 85, T. D. 47067, that there is an exception to

the rule of commercial designation and, in that connection, the court stated as follows:

It is true, as argued by appellant, that the rule is well established by this and other courts that. generally, descriptive terms as well as *eo nomine* terms are subject to proof of commercial designation; but there is one exception to this rule, and that is that proof of commercial designation does not control the classification of an article if Congress, in enacting the statute, has made it manifest that the words of the statute must be understood according to their common meaning. *United States* v. *Stone & Downer Co.*, 274 U. S. 225; *United States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, T. D. 42732; *LaManna, Azema & Farnan*, 14 Ct. Cust. Appls. 289, T. D. 41908; *American Express Co.* v. *United States*, 10 Ct. Cust. Appls. 275, T. D. 38680.

That case concerned the proper classification of handkerchiefs and the question was whether the term "hemmed" in connection with the word "Handkerchiefs" was subject to the rule of commercial designation. This court in its decision held they were not, stating as follows:

We are in accord with the view of the trial court that this is not a proper case for the application of the rule of commercial designation, because we are clear that Congress intended that the said proviso should include hemstitched handkerchiefs. The proviso reads—"That any of the foregoing * * *"—that is, handkerchiefs hemmed or handkerchiefs hemstitched, or handkerchiefs unfinished having drawn threads, if "made with hand rolled or hand made hems," shall be subject to an additional duty of 1 cent each. Had the proviso literally read, *"Provided,* That hemstitched handkerchiefs made with hand rolled or hand made hems shall be subject to an additional duty of 1 cent each," we hardly think that it would be contended that proof that, commercially, hemstitched handkerchiefs were regarded as not hemmed, would be considered as material or relevant.

It may be observed that in the involved statute it is stated that all kinds of leather, *grained, printed, embossed, ornamented in any manner or to any extent and by whatever name known and to whatever use applied,* are included. Certainly the Congress clearly intended by such language that all leather, when grained in any manner or to any extent, whether known as "grained" or by any other name, should be dutiable under that provision.

We agree with the contention of the Government that, under the wording of the statute, leather such as that which is here involved may not properly be the subject of commercial designation and, for that reason, the judgment of the United States Customs Court is *reversed.*

WILLIAM P. COLE, JR., Judge, having participated below, disqualified himself to sit in this case and Jackson, Judge, retired, was recalled to participate herein.

GARRETT, Chief Judge, because of illness, did not participate in the decision of this case.