22 U.S. 421 (1824)
9 Wheat. 421
The MARGARET, alias CARLOS FERNANDO, HALEY, Claimant.
Supreme Court of United States.
February 11, 1824.
February 15, 1824.
This cause was argued by the Attorney-General, for the appellants, and by Mr. D.B. Ogden, for the respondent and claimant.
*422 Mr. Justice STORY delivered the opinion of the Court.
This is a case of seizure, for an asserted forfeiture under the ship registry act of the 31st of December, 1792, c. 1. The libel contains five counts, the four first of which are founded on the 16th section, and the last on the 27th section of the act. The former declares, "that if any ship or vessel heretofore registered, or which shall be hereafter registered, as a ship or vessel of the United States, shall be sold or transferred, in whole or in part, by way of trust, confidence, or otherwise, to a subject or citizen of any foreign prince or state, and such transfer shall not be made known, in manner hereinbefore directed, such ship or vessel, together with her tackle, apparel, and furniture, shall be forfeited." The manner of making known the transfer here referred to, is found prescribed in the 7th section of the act; and, so far as respects the present case, would have been a delivery of the certificate of registry by the master of the vessel to the collector of the district, within eight days after his arrival in the district, from the foreign port where the transfer was made.
It appears, from the evidence, that the claimant was the sole owner and master of the schooner under seizure. She was duly registered at the port of Baltimore; and on the 4th day of May, she was duly transferred at Havana, by procuration, to a Spanish subject domiciled in Cuba, and received the proper documents evidencing her Spanish character. The schooner was, at this time, lying at Matanzas, and soon afterwards sailed *423 on the homeward voyage, under her American papers, still having the Spanish documents on board, in the custody of a person who assumed the character of a passenger, but who was, in fact, the Spanish master, and kept them concealed. The name of the vessel had been blacked out of the stern, which was the first circumstance that excited suspicion of her character. On further inspection, it was found, that her name, "Margaret, of Baltimore," was inserted on a moveable sheet of copper; and upon a close search, directed by the captain of the revenue cutter, the Spanish documents were discovered, and delivered up to the collector of Baltimore.
The fact of the transfer of the schooner to a Spanish subject, and the assumption of the Spanish character, are not denied; and the defence is put upon this point, that it was a mere colourable transfer, for the purpose of evading the Spanish revenue laws, the real American ownership not having been bona fide changed. There is certainly nothing in this record, that shows that the intention might not also have been to evade the American revenue laws; for the obvious purpose of keeping the Spanish master and papers on board, was to assume the American character in our ports, and to re-assume the Spanish character on the next voyage, so that the parties might obtain the fullest benefit of the double papers. But, assuming that the sole object of the transfer was a fraud upon the laws of Spain, it was, nevertheless, a transfer binding between the parties, and changing the legal ownership. It was completely, within *424 the words of the law, a transfer, "by way of trust and confidence," to a foreign subject; the trust and confidence being, that the vessel should be reconveyed to the American owner when the special purposes of the transfer were entirely consummated. That a reconveyance would be decreed in an American Court of justice, upon such a transaction with a foreign subject, in a foreign port, in violation of the municipal laws of his country, is a point which we are by no means disposed to admit. It is sufficient for us, however, that the case is brought within the very terms of the act of Congress, which does not require a beneficial or bona fide sale, but a transmutation of ownership, "by way of trust, confidence, or otherwise." But it is said, that the case is not within the policy of the act. What the policy of the act is, can be known only by its provisions; and every section of it betrays a strong solicitude on the part of the Legislature to trace and inspect every change of ownership; and, for this purpose, to require a public avowal of it, and an alteration of the ship's documents, so as to exhibit, at all times, the names of all persons who are the legal owners. The policy evinced by this course of legislation, is the encouragement of American navigation and American ship building, to the exclusion of foreign navigation and foreign ownership, and securing to American registered ships a preference, in all our revenue transactions, over all vessels which were not strictly entitled to the character. The Legislature foresaw that it would be impossible for the officers of government to ascertain the secret intentions *425 of parties, or the object of ostensible transfers of ownership. Whether such transfers were bona fide, or colourable, for meritorious or illegal purposes, were matters of private confidence, and could rarely be ascertained by competent and disinterested proof. To admit secret transfers of ownership to any persons, and especially to foreigners, and allow, at the same time, to the ships the full benefit of the American character, would be hazarding the main objects of the act; it would invite all sorts of contrivances to evade the laws, and disable the government from possessing means to detect frauds. The correct course of legislation was, therefore, obvious. It was to lay down a strict and plain rule, requiring all transfers to be made known, from time to time, as they occurred; and a surrender of the American documents, when the legal ownership passed to a foreigner, whatever might be the secret trusts with which it was accompanied. The words of the section now under consideration, are direct to this purpose; and so far from contravening, they support, in the fullest manner, the general policy of the act. They are not, then, to be construed in a more limited sense than their obvious purport indicates.
But it is agreed that the proviso of this section shows, that the forfeiture inflicted by the enacting clause is not absolute, and that the trial ought not to have been by the Court, as a cause of admiralty and maritime jurisdiction, but by a jury, as upon an exchequer information, since a verdict alone can fix the forfeiture. The words of the *426 proviso are, "Provided, that if such ship or vessel shall be owned in part only, and it shall appear to the jury, before whom the trial for such forfeiture shall be had, that any other owner of such ship or vessel, being a citizen of the United States, was wholly ignorant of the sale or transfer to, or ownership of, such foreign subject or citizen, the share or interest of such citizen of the United States shall not be subject to forfeiture; and the residue only shall be forfeited." Now, in the first place, this being a mere proviso, by way of exception from the enacting clause, it constitutes properly matter of defence, and need not be taken notice of in a libel, brought to enforce the forfeiture. The party who seeks the benefit of it, must, in his claim, insist upon it, so as to bring it as matter cognizable in the issue to the jury. In the next place, the very terms of the proviso apply only to the case of a part owner, and not to a sole owner, of the ship. The case put is, where the ship "shall be owned, in part only," by a person ignorant of the transfer, such part shall not be subject to forfeiture. In the case before the Court, the claim is by Haley, as sole owner of the schooner, and all her American documents establish him as sole owner. He does not assert an ignorance of the transfer, nor claim in any way the benefit of the proviso. So that, whatever may be the true construction of the proviso, in other respects, it is plain, that it is inapplicable to his predicament, and might, on this account, be dismissed from the consideration of the Court.
But the other suggestion, in respect to jurisdiction, *427 is entitled to scrupulous attention. The 29th section of this act declares, that all penalties and forfeiture incurred for offences against it, "shall and may be sued for, prosecuted, and recovered, in such Courts, and be disposed of in such manner, as any penalties and forfeitures, which may be incurred for offences against an act entitled, `an act to provide more effectually for the collection of the duties imposed by law on goods, wares and merchandise imported into the United States, and on the tonnage of vessels,' may be legally sued for, prosecuted, recovered and disposed of." The act here referred to, is the revenue act of the 4th of August, 1790, ch. 35. which, in the 67th section, provides for the prosecution for penalties, and libelling for forfeitures, in the same general terms, which are employed in the revenue act of the 2d of March, 1799, ch. 128. on the same subject. Now, the judiciary act of 1789, ch. 20. in express terms, and as has been repeatedly adjudged, upon the most solemn consideration, by this Court, rightfully includes all seizures for forfeitures made under laws of impost, navigation, and trade, on waters navigable from the sea, by vessels of ten tons burthen and upwards, as causes of admiralty and maritime jurisdiction, which are to be tried by the Court, and not by a jury. And seizures made under the revenue act of the 4th of August, 1790, ch. 35. as well as under that of 1799, ch. 128. have been uniformly tried in this manner. Where the seizures have been made on land, or on waters not so navigable, the trial has been by jury. It is true, that the first case in which the question as to *428 the admiralty jurisdiction under the judiciary act of 1789 came under consideration, did not arise until after the enactment of the ship registry act,[a] and, therefore, it may have escaped the attention of Congress, that such was the legal construction. But such a supposition is not lightly to be indulged, not only from the direct and unequivocal language of the judiciary act of 1789, but also from the reference in the registry act to the revenue act of 1790, for the mode of suing for penalties and forfeitures. The latter act (s. 67.) takes an express distinction between penalties and forfeitures, confining the trial of any fact put in issue in suits for penalties, to the judicial district in which such penalties shall accrue, and then providing, in general terms, for libels, to enforce forfeitures, to be brought "in the proper Court having cognizance thereof;" thus pointing to the judiciary act, for the tribunal which is to exercise jurisdiction, and for the mode in which it is to be exercised. It certainly cannot be admitted, that the obscurity of a proviso like the present ought to repeal, by implication, the deliberate act of the Legislature, in settling the general jurisdiction of its Courts, and placing, with so much solicitude, causes of this nature on the admiralty side of the Courts. The proviso is still applicable, in its terms, to all cases of seizures, on land and on waters, where the trial is to be by a jury; and, perhaps, taking the whole language, it ought to be construed to include within its equity, cases, where the trial is by the Court, *429 and the forfeiture is not intended to be inflicted by the act. The probability is, that the words "court or," were omitted before the word "jury," by mistake, in the draft of the act. But this omission, if it is to have any effect, is not to oust the jurisdiction of the Court, but to take from the party a benefit, which is not within the words of the proviso. It is the opinion of the Court, that the present seizure, which is averred in the libel to have been made upon waters navigable from the sea by vessels of ten tons burthen and upwards, is a cause of admiralty and maritime jurisdiction, and was rightfully tried by the District Court, without the intervention of a jury.[a] This objection cannot, therefore, avail the claimant.
The view that has already been taken of the cause upon the merits, as applicable to the four first counts in the libel, render it unnecessary to go into a particular examination of the fifth count. That count is founded, as has been already stated, upon the 27th section of the act, which declares, "that if any certificate of registry, or record, shall be fraudulently or knowingly used for any ship or vessel, not then actually entitled to the benefit thereof, according to the true intent of this act, such ship or vessel shall be forfeited to the United States, with her tackle, apparel and furniture." We think, that there are facts enough in the proofs before us, to establish the forfeiture also under this clause. By the transfer at Havana, the schooner lost her American character, and the title to *430 use her certificate of registry for the return voyage. She, however, did use it, and sailed under its avowed protection, "not being entitled to the benefit ther of, according to the intent of the act."
The judgment of the District Court is reversed, and a decree of condemnation awarded against the schooner and her appurtenances.
NOTES
[a] La Vengeance, 3 Dall. 297.
[a] Vide ante, vol. 8. p. 391. The Sarah, and Note a. p. 396.