## THE CHIQUITA.*

(District Court, E. D. Louisiana. December 10, 1926.)

No. 18545.

**1. Customs duties ☞130(3)—Liquor-laden vessel held lawfully seized by Coast Guard 35 miles off shore, and subject to forfeiture (Tariff Act 1922, §§ 581, 619 [Comp. St. §§ 5841h, 5841h39]).** ·

Liquor-laden vessel, seized by Coast Guard vessel on high seas 35 miles off shore, *held* lawfully seized and subject to forfeiture, in view of Tariff Act 1922, §§ 581, 619 (Comp. St. §§ 5841h, 5841h39), as against claimant's contention that seizure was invalid because made by collector of customs for port of New Orleans, within Eastern district of Louisiana, and vessel first brought into Southern district of Mississippi.

**2. Customs duties ☞130(3)—Changes in name and transfers of American vessel, and simulation of foreign registry to conceal illicit liquor traffic, held not to change status of vessel as subject to seizure and forfeiture (Shipping Act 1916, § 9, as amended by Act July 15, 1918, § 3, and § 42 [Comp. St. §§ 8146e, 8146r(6)]; Ship Mortgage Act 1920, § 30, subsec. C [Comp. St. § 8146¼kk]; Rev. St. §§ 4172, 4179 [Comp. St. §§ 7753, 7762]; Act Dec. 31, 1792, § 7 [1 Stat. 290]; Tariff Act 1922, §§ 581, 619 [Comp. St. §§ 5841h, 5841h39]).**

Under Shipping Act 1916, § 9, as amended by Act July 15, 1918, § 3 (Comp. St. § 8146e), and section 42 (Comp. St. § 8146r[6]), Ship Mortgage Act 1920. § 30, subsec. C (Comp. St. § 8146¼kk), Act Dec. 31, 1792, § 7 (1 Stat. 290), and Rev. St. §§ 4172, 4179 (Comp. St. §§ 7753, 7762), changes in name of American vessel, and transfers and efforts to simulate foreign registry and sail under foreign flags, fraudulently designed to conceal its illicit trade in intoxicating liquor, and to deceive and defraud revenue officers, *held* not to change status of vessel as vessel of United States subject to seizure and forfeiture under Tariff Act 1922, §§ 581, 619 (Comp. St. §§ 5841h, 5841h39).

In Admiralty. Libel by the United States against the gas screw or auxiliary schooner, Chiquita and her tackle, cargo, apparel, etc., claimed by Walter K. Hartwig, master, as bailee for the owner. Decree of forfeiture granted.

E. E. Talbot, Asst. U. S. Atty., of New Orleans, La., for plaintiff.

Gex & Russell, of Gulfport, Miss., and W. B. Grant, of New Orleans, La., for claimants.

BURNS, District Judge. Libelant prays for condemnation of the auxiliary schooner Chiquita, which was apprehended by the United States Coast Guard boat A. B. 8 on the high seas at a point 35 miles off shore in the

*Judgment reversed 19 F.(2d) 417.

18 F.(2d)—43

Gulf of Mexico, laden with alcohol, whisky, and intoxicating liquors. The proceedings are predicated upon a seizure made by the collector of customs for the port of New Orleans, within this Eastern district of Louisiana.

[1] The claimant, Walter K. Hartwig, master of the vessel, as bailee for the owner, contests the seizure on various grounds, contending that the vessel was first brought into the Southern district of Mississippi, because she was towed to a point in Ship Island Channel, within the three-mile limit of the Southern district of Mississippi; that she was anchored there, while the officer in charge of the Coast Guard boat took Capt. Hartwig, of the Chiquita, ashore with him to Biloxi, Miss., in said district, reported the capture to his ranking officer of the Coast Guard Service, by whose instruction he returned aboard with the captain, again took the Chiquita in tow, and brought it into port in New Orleans.

This contention cannot be sustained, because the jurisdiction of this court was secured by a seizure and possession, in the hands of the collector of customs, prior to and at the time of the filing of the libel, so that the process of this court lawfully attached. The authorities sustaining this view are reviewed by the Supreme Court in No. 341, October term, 1926, in the matter entitled William Earl Dodge et al. v. United States of America, 47 S. Ct. 191, 71 L. Ed. ——. The Supreme Court cites The Richmond, 9 Cranch. 102, 3 L. Ed. 670; The Merino, 9 Wheat. 391, 403, 6 L. Ed. 118; The Underwriter (C. C. A.) 13 F.(2d) 433, 434.

The opinion referred to also disposes of claimant's other contentions; based upon the alleged illegality of the capture; that is, that the Coast Guard had no authority to make arrests beyond the four-league limit. The court approves a Circuit Court of Appeals decision which relied on the doctrine expounded by Mr. Justice Story in The Caledonian, 4 Wheat. 100, 4 L. Ed. 523, to the effect that any one may seize any property for a forfeiture to the government, and that, if the government adopts the act and proceeds to enforce the forfeiture by legal process, this is of no less validity than when the seizure is by authority originally given. However effected, the object is brought within the power of the court, which is the end contemplated by the law. Moreover, the capture in this case is justified upon other grounds. In the recent decision in United States v. American Steam Screw Underwriter (C. C. A.) 13 F.(2d) 433, an American vessel in the coastwise

trade was seized with a cargo of liquor 35 miles from shore under circumstances very similar to those here, and the legality of the seizure and authority of the Coast Guard were contested unsuccessfully on much the same grounds as are urged here.

It is unnecessary to quote at length from that well-considered opinion, which reversed a decision of the District Court, and has been approved since by the Supreme Court in No. 341, October term, 1926, Dodge v. U. S., cited supra. One of the important points emphasized was that section 581 of the Tariff Act of September 21, 1922 (42 Stat. 979 [Comp. St. § 5841h]), was intended to give the Coast Guard authority to stop, board, search, and seize foreign vessels within the 12-mile limit upon reasonable grounds appearing that illicit trade, forbidden by the laws of Congress, was being practiced; that it was not intended as a delimitation of the powers of that service forbidding the search, seizure, or detention of American vessels beyond the 12-mile limit. On the contrary, section 619 of the same act (Comp. St. § 5841h39) provides compensation for informers, other than officers of the United States, who may detect and seize such vessels.

[2] Another contention is that the vessel was not liable to seizure because previously she had been sold under a decree of a British court of admiralty in Nassau, Bahamas. A certified copy of this proceeding, filed in evidence, shows that she was then sold to a British subject as an American vessel named Patsy; that he changed her registry to British under the name Æsop, but the certificate of registry shows by indorsement of the British registrar that "this register was closed December 15, 1925. Vessel sold to an alien. Certificate of registry not delivered her owing to same being in hands of United States authorities." The British consul testified that this British registry is not valid. The alien referred to purported to be one Carlos Armador, a citizen of Honduras, residing in Havana, Cuba. A document issued to him by the Honduranian consul in Havana, giving the vessel its latest name, Chiquita, when translated, proved to be but temporary and provisional, conditioned upon the vessel's proceeding thence directly to Honduras for the purpose of registry. The consul general of Honduras testified that this document was not valid or recognized by his country, because the vessel had never gone to Honduras to register, although more than three months had elapsed.

The evidence shows conclusively that the several changes of name, and the several transfers, coupled with the efforts to simulate foreign registry and sail under foreign flags, were fraudulently designed to shield the vessel and its owners from discovery in illicit trade—to deceive and defraud the officers of the revenue. The vessel had no status by registry when seized, either under the British or the Honduranian governments. When discovered, identified, and apprehended, she was on the high seas only 35 miles from the Gulf Coast of the United States, and several hundred miles from any course between Havana, Cuba, and Honduras. She was also about a similar distance from any course to Tampico, Mexico, for which port her cargo was manifested.

The Chiquita was built in the United States, and was originally named the Louise Pol, with enrollment and license in the coastwise trade, first under that name and then as the Patsy. She surrendered this license at Miami, Fla., and took new registry and license in the foreign trade, so as to make a foreign port. She proceeded thence to Nassau, Bahamas, British West Indies, where the libel proceedings referred to followed in 1922. Among the documents filed by the government in evidence are two bills, one showing the purchase of a new engine in New Orleans, and the other showing the installation thereof on the vessel, while under the name Æsop, at a shipyard in Mobile, Ala., during March and April, 1926. Whether this was a clandestine trip or not is unimportant, but it proves conclusively that subsequent to the change of her name, and to the alleged British registry, she was at least once in a port of the United States and did not comply with the shipping and navigation laws under which forfeiture is sought.

Under these circumstances, it seems certain that her character as a vessel of the United States has not been changed. She was documented as such within the meaning of the Shipping Act of 1916 (Act Sept. 7, 1916, c. 451, § 9, 39 Stat. 730, amended by Act July 15, 1918, c. 152, § 3, 40 Stat. 900 [Comp. St. § 8146e]), by the terms of which she was forfeit to the United States by any sale, transfer, or mortgage to a person not a citizen of the United States without first obtaining the approval of the United States Shipping Board. Likewise she is deemed to be a vessel of the United States until her registry enrollment or license is surrendered with the approval of the United States Shipping Board,

"any other act of Congress to the contrary notwithstanding." Section 42 Id. 40 Stat. 903 (Comp. St. § 8146r[6]). No sale, conveyance or mortgage, in respect to such vessel is valid, against any person but the grantor or mortgagor, until such bill of sale, conveyance, or mortgage is recorded in the office of the collector of customs of the port of documentation. Ship Mortgage Act June 5, 1920, c. 250, § 30, subsec. C, 41 Stat. 1000 (Comp. St. § 8146¼kk).

Under sections 4172 and 4179, R. S. (Act Dec. 31, 1792, 1 Stat. 295 [Comp. St. §§ 7753, 7762]), she was forfeit to the United States for failure to change registry with the collector of customs upon changing her name, and for failure to surrender registry and her license in foreign trade upon sale or transfer, "by way of trust, confidence, or otherwise, to a subject or citizen of any foreign prince or state," in the manner and form, and within the time, prescribed by section 7 of the Act. Id. Dec. 31, 1792, 1 Stat. 290.

Whether the sales or transfers made were bona fide or simulated, the vessel must be considered a vessel of the United States upon her return, under the statutes and the authorities cited. Other cases considered were The Hawk, Fed. Cas. No. 15,331; The Florenzo, Fed. Cas. No. 4,886; The Margaret, 9 Wheat. 421, 6 L. Ed. 125; Philips v. Ledley, Fed. Cas. No. 11,096; The Mary Celeste, Fed. Cas. No. 9,202; The Apollon, 9 Wheat. 362, 6 L. Ed. 111.

A decree of forfeiture may be entered accordingly.