(C. D. 880)

Pan American Products Corp. et al. v. United States

United States Customs Court, Second Division

(Decided October 11, 1944)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* and *J. Stuart Tompkins* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *John J. McDermott*, special attorneys), for the defendant.

*William Whynman, amicus curiae.*

Before Tilson, Kincheloe, and Lawrence, Judges

Kincheloe, Judge: These suits involve the dutiable classification of certain importations of cordage from Mexico. The merchandise in question is invoiced as "sisal rope," varying in diameter from ⅜ to 1⅛ inches. Most of it is described on the invoices as unoiled. Duty was assessed on the merchandise either at 2 cents a pound, or at 2 cents a pound and 15 per centum ad valorem, according to whether it was more or less than three-fourths of an inch in diameter, under the provisions of paragraph 1005 (a) of the Tariff Act of 1930, which read as follows:

Par. 1005 (a). Cordage, including cables, tarred or untarred, composed of three or more strands, each strand composed of two or more yarns:

(1) Wholly or in chief value of *manila (abaca)*, *sisal*, *henequen*, or other hard *fiber*, 2 cents per pound; and in addition thereto, on any of the foregoing smaller than three-fourths of one inch in diameter, 15 per centum ad valorem; * * *. [Italics ours.]

The merchandise is claimed dutiable by the plaintiffs either at 1 cent per pound or at 1 cent a pound and 7½ per centum ad valorem, as cordage wholly or in chief value of sisal under said paragraph 1005 (a) (1) of the Tariff Act of 1930, as modified by the trade agreement with the Netherlands (T. D. 48075). The alternative claim is made that if the merchandise is not dutiable as first claimed, it is dutiable at 20 per centum ad valorem under paragraph 1005 (b) of said tariff act, as modified by said trade agreement with the Netherlands.

Said paragraph 1005 (b) reads as follows:

Par. 1005 (b). Cords and twines (whether or not composed of three or more strands, each strand composed of two or more yarns), tarred or untarred, single or plied, wholly or in chief value of *manila (abaca)*, *sisal*, *henequen*, or other hard *fiber*, 40 per centum ad valorem. [Italics ours.]

The relevant provisions of said trade agreement read as follows:

| Tariff Act of 1930 paragraph | Articles | Rate of duty |
|---|---|---|
| 1005 (a) (1)_____ | Cordage, including cables, tarred or untarred, composed of three or more strands, each strand composed of two or more yarns, wholly or in chief value of *sisal*. | 1¢ per lb. |
| | Any of the foregoing smaller than three-fourths of one inch in diameter shall be subject to an additional duty of | 7½% ad val. |
| 1005 (b)_____ | Cords and twines (whether or not composed of three or more strands, each strand composed of two or more yarns), tarred or untarred, single or plied, wholly or in chief value of *manila (abaca)*, *sisal*, *henequen*, or other hard *fiber*. [Italics ours.] | 20% ad val. |

The contention of the Government in this case is that the cordage in question is made of henequin and is therefore dutiable under paragraph 1005 (a) of said tariff act as cordage wholly or in chief value of henequen or other hard fiber, other than sisal, at the rates assessed by the collector. The contention of the plaintiffs is that the merchandise is made of sisal and should therefore be dutiable as claimed. Of course the distinction between sisal cordage and henequen cordage

is not very important or material under paragraph 1005 (a) of the tariff act, as both kinds are provided for at the same rates of duty. The question of the distinction between the two does arise, however, in the present instance in view of the fact that the reduced rate of duty under said paragraph 1005 (a) is limited by the said trade agreement only to cordage wholly or in chief value of sisal.

We quote the definitions of the terms "sisal" and "henequen" from Webster's New International Dictionary, 1936 edition, as follows:

*sisal, n.* Also *sisal hemp. a.* A strong durable white fiber, three to five feet long, derived from the leaves of a West Indian agave (Agave sisalina) and used for hard fiber cordage, esp. lariats, and to some extent for binder twine. Also, the plant yielding this fiber, grown in Java, East Africa, Bahamas, and Mexico. b. A similar fiber derived from any of several related plants, as the henequen and A. *decipiens*, the source of false sisal.

*henequen, n.* Also henequin. a. A strong, yellowish leaf fiber, derived from the leaves of Agave fourcroydes of Yucatan. It is the chief source of binder twine. b. The plant yielding this fiber.

At the first hearing at New York, June 11, 1942, all these protests were separately heard for the purpose of introducing in evidence the official samples. In protest 21995–K, however, plaintiffs called three witnesses. At the subsequent hearing at New Orleans, March 24, 1943, the protests were all consolidated by agreement of counsel, with the understanding that the testimony taken by plaintiffs' three witnesses at New York was to apply with like effect to the rest of these consolidated protests. At that time two further witnesses were called by plaintiffs; the Government, however, offering no testimony.

Briefly stated, the testimony of all of plaintiffs' witnesses is simply to the effect that the imported merchandise is composed of sisal, or Mexican sisal or henequen; that sisal and henequen were practically the same thing; that they never bought any merchandise similar to the imported under the designation of henequen cordage, and that they never heard of merchandise similar to the imported referred to as henequen in the United States.

The claim of the plaintiffs, according to their brief, seems to be (1) that sisal and henequen are synonymous terms in the trade, and that the merchandise in question was therefore regarded as sisal cordage in the trade; (2) that the merchandise is in fact cordage made of sisal; and (3) that the invoice descriptions and declarations should be taken as sufficiently showing that the merchandise consists of sisal cordage, in view of the fact that there are no collector's or appraiser's reports in any of these cases finding it to be henequen, and the Government has offered no evidence of its own.

As to the first point, we may say that even if henequen was also known as sisal or Mexican sisal in the trade, as testified by some of plaintiffs' witnesses, it is significant that Congress has expressly pro-

vided for sisal and hencquen, and other hard fibers, in paragraph 1684 of the Tariff Act of 1930, as also for binding twine of sisal grass, henequen, etc., in paragraph 1622, as well as for cordage and twines of sisal, henequen, etc., in paragraph 1005 (a) and (b). And we think it is still more significant that in the trade agreement with the Netherlands the lower rate of duty accorded to cordage under paragraph 1005 (a) (1) is limited to cordage "wholly or in chief value of *sisal*," and not also extended to cordage wholly or in chief value of manila, henequen, or other hard fiber, while the reduced rate under paragraph 1005 (b) is made to apply equally to cords and twines wholly or in chief value of "manila (abaca), *sisal, henequen*, or other hard fiber." [Italics ours.]

From this and information gathered (1) from the "Digests of Trade Data Respecting the Products Affected by the 'Concessions Granted by the United States in the Trade Agreement with the Kingdom of the Netherlands', " at pages 130, 131, and 135, compiled by the United States Tariff Commission; (2) Circular No. 186, October 1931, issued by the United States Department of Agriculture, entitled "Sisal and Henequen, Plants Yielding Fiber for Binder Twine," pages 1 and 7; (3) "Digests of Trade Data with Respect to Products on which Concessions Were Granted by the United States" concerning the "Trade Agreement between the United States and Mexico" (T. D. 50797), at pages 198, 200, 202, 203, and 206, compiled by the United States Tariff Commission; and (4) "Tariff Readjustments, 1929,"—Hearings before the Committee on Ways and Means, 70th Congress, 2d session, vols. 8, 9, and 10, at page 5978, referred to by the Government in its brief, we think it is definitely shown that both Congress and the negotiators of the trade agreement with the Netherlands used the terms "sisal" and "henequin" in the botanical sense, namely, as referring to the plant or fiber known botanically as "Agave sisalina" and "Agave fourcroydes," respectively, and that in the tariff sense "sisal" and "henequen" were therefore not to be considered as being the same thing.

Therefore the fact that in the trade agreement with the Netherlands the modification of said paragraph 1005 (a) has omitted henequen cordage, while the modification of paragraph 1005 (b) expressly includes henequen cords, further strengthens the view that henequen cordage, as distinguished from sisal, was not intended to be included under the modification of said paragraph 1005 (a), under the legal maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of the other).

The next question is whether the record shows that any or all of the imported merchandise is in fact in chief value of sisal, as distinguished from henequen, as claimed by the plaintiffs. On this issue the testimony of plantiffs' witnesses is of little or no value as they make

no distinction between sisal and henequen cordage. Plaintiffs argue in their brief, however, that as there are no collector's or appraiser's reports, and the record fails to show that the merchandise was actually classified as henequen cordage under said paragraph 1005 (a), there is no presumption of law that it is cordage made of henequen, or that it is not made of sisal, and that therefore the invoice descriptions or declarations should be accepted as controlling, in the absence of any better evidence.

We quite agree with the plaintiffs' contention, if such are the facts, under authority of our recent decision in *John C. Sleater Co., Inc.* v. *United States*, 9 Cust Ct. 190 (C. D. 691), in which we held that invoice descriptions or declarations were entitled to be given evidentiary value when unimpeached and undiscredited, in the absence of other or better evidence. Citing *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T. D. 38400.

We find upon an examination of the invoices in these cases that all the merchandise in question is invoiced as "sisal rope" of designated widths. The invoices in protests 21995–K, 46394–K, and 50894–K in addition contain affirmative declarations that the sisal rope is made from sisal fiber (Agave sisalana). The invoice in said protest 50894–K, however, has a red-ink notation thereon, under the items of sisal rope, reading: "Not sisal, made of henequen." As the record fails to show by whom the notation was made, or that the collector adopted such classification of the merchandise, it will have to be disregarded.

In protest 42178–K there is a statement on the face of the consular invoice reading: "We do hereby certify the within merchandise to be the product of the soil and industry of Mexico; that the fibre used is sisal or Agave Sisalana and Furcroydes in undetermined quan it es of each."

The invoice in protest 44200–K contains no affirmative statement as to the fiber origin of the so-called sisal rope other than the invoice itemization of the merchandise as "Sisal rope."

As stated before, the Government offered no testimony. So in view of the fact that the record fails to show any positive or definite classification of any of the imported merchandise as cordage in chief value of manila (abaca), sisal, henequen, or other hard fiber, apart from the rate of duty assessed thereon under paragraph 1005 (a) of the Tariff Act of 1930, we think the collector's assessment of duty in each instance is devoid of any legal presumption that it is not sisal cordage, and that under the circumstances the invoice descriptions or declarations may be accepted as of evidentiary value in some of these cases, namely, in protests 21995–K, 46394–K, and 50894–K, in which the invoices specifically declare that the cordage in question is made from sisal fiber (agave sisalana), which of course is sisal in the botanical

sense as used by Congress and the trade negotiators. The claim of the plaintiffs as to these three protests is therefore sustained.

In protest 42178–K, the declaration on the invoice that the fiber used in the cordage is "sisal or agave sisalana and fourcroydes in undetermined quantities of each" clearly fails to show that it is made in chief value of the botanical sisal or agave sisalana. The protest is therefore overruled.

As to protest 44200–K, it is our opinion that the invoice description of the merchandise as sisal rope alone, without any affirmative declaration as to the origin of the fiber of which it is made, is hardly sufficient to prove that it is in fact made in chief value of botanical sisal as distinguished from Mexican sisal or henequen. This protest is therefore also overruled.

Judgment will be rendered accordingly.