(C. D. 1022)

HING WAH TAI & Co. v. UNITED STATES

United States Customs Court, First Division

(Decided September 6, 1946)

Lawrence, Tuttle and Harper (Walter I. Carpeneti and Lawrence A. Harper of counsel) for the plaintiff.

Paul P. Rao, Assistant Attorney General (James F. Donnelly, Harold L. Grossman, Robert C. O'Grady, William J. Vitale, Richard E. FitzGibbon, and Arthur R. Martoccia, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: Paragraph 721 (e) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 721 (e)) provides for "Oysters, oyster

juice, or either in combination with other substances, packed in air-tight containers, 8 cents per pound, including weight of immediate container," which the collector invoked in classifying the merchandise in question, described on the invoices as "oyster sauce." Plaintiff's principal claim is for free entry under paragraph 1761 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1201, par. 1761), reading·as follows: "Shrimps, lobsters, and other ·shellfish, fresh or frozen (whether or not packed in ice), or prepared or preserved in any manner (including pastes and sauces), and not specially provided for." The protests embody several alternative claims, none of which was stressed at the trial or in counsel's brief. Therefore, no further reference is made herein to them.

Substantially the same merchandise was the subject of previous litigation. The time consumed and the diligence displayed in the previous cases present much, as should be expected, to clarify the purpose of this further trial and amplify our disposition of the new issues.

*Shun Yuen Hing & Co. et al.* v. *United States*, 23 C. C. P. A. 316, T. D. 48178, was the first case. The court found the merchandise to be "a rather heavy dark liquid imported in bottles, [which] is used by the Chinese chiefly in the kitchen as a flavoring in the cooking of foods, such as meat, fish, and eggs, although it is sometimes used at the table on such foods after they have been cooked," and that it was prepared in the following manner "by the use of approximately 133⅓ pounds of oysters, 10⅝ pounds of salt, and 6½ gallons of water":

Oysters, salt, and water are used only. First the oysters are removed from the shell, then put in a pan. Salt and water are added. The mixture is *steamed* for three hours. The oysters are then removed. The water left in the pan is placed in earthenware jars where it is kept for two months. After two months the skim is removed and the remainder, which is the oyster sauce, is packed in bottles or cans.

In sustaining the collector's classification under paragraph 721 (e), *supra*, the court said:

According to the testimony in this case, oysters were included in the mixture during the steaming process, but were removed after the steaming process. Whether the steaming process dissolved a portion of the oysters, does not appear, and, so far as we can ascertain from the record, the involved merchandise is nothing more than oyster juice in combination with salt and water, steamed. Accordingly, the involved merchandise is not oysters, prepared or preserved in the form of a sauce or otherwise, and, therefore, is dutiable under the provisions of paragraph 721 (e), as held by the collector and the trial court.

The foregoing comment gave reason for the second case, *Wo Kee & Co. et al.* v. *United States*, 28 C. C. P. A. 272, C. A. D. 154, wherein plaintiff offered testimony, not introduced in the earlier case, of a biochemist and pharmacologist to show that the imported merchandise contained a substantial proportion of the oysters apart from oyster

juice. The witness conducted microscopic examinations of the commodity in controversy as well as of oyster juice. His analysis of the imported product disclosed cellular structures, some of which are characteristic of shellfish, but he was unable to state "any particular variety of shellfish in which they originated." In his microscopic examination of oyster juice, the witness found no cellular structures but only "clear, colorless fluid, which smelled like the oysters from which it was derived, and was slightly more viscous than water." The court held that such additional testimony did not "substantially change either the factual or legal situation," existing in the *Shun Yuen Hing* case, *supra*, and stated:

> The fact that a microscopic examination discloses some cellular structure in the involved merchandise, which structure is not visible to the naked eye, does not convince us that the merchandise is not "oyster juice, * * * in combination with other substances." We do not think its identity as oyster juice was lost because of its being extracted from the oysters through a boiling or steaming process. It is a matter of common knowledge that in extracting or expressing juice from lemons, oranges, and other fruits, some of the fiber or cellular structure may be included in the juice extracted; but surely the juice would not lose its character of juice because of that fact.

In the course of its decision, again affirming the collector's classification under paragraph 721 (e), *supra*, the court observed that much testimony relating to the use of the imported merchandise was offered by the importer to establish that the product is a shellfish sauce, and not oyster juice, and made the further comment that no claim of commercial designation was made.

The instant case has been presented on the principle of commercial designation, and in doing so, plaintiff introduced the testimony of four Chinese witnesses. Giving their combined testimony· the broadest interpretation favorable to plaintiff's position, it can be said that the term "shellfish sauce," as generally recognized by Chinese merchants, is a liquid or semi-liquid, made with shellfish or flavored with its juice, prepared with a mixture of two or more substances, and used for flavoring food, that the said term is a generic one, embracing shrimp sauce, oyster sauce, and clam sauce, and that the merchandise in question is one of the kinds of shellfish sauce, never dealt in as such, but always bought and sold under the specific name "oyster sauce."

The effect of such testimony is to show that the product under consideration is commercially known as oyster sauce. But the term "oyster sauce" is not used in the statute, and therefore a showing of such commercial designation does not accomplish plaintiff's objective. It is fundamental that proof of commercial designation must be directed to the precise statutory language or designation involved, *United States* v. *Armand Schwab & Co., Inc., et al.*, 30 C. C. P. A. 72, C. A. D. 218.

Cases on commercial designation are numerous. *Neuman & Schwiers Co., Inc.* v. *United States*, 24 C. C. P. A. 127, T. D. 48606, stated the rule as follows:

\* \* \* The Supreme Court \* \* \* as in the noted case of *Two Hundred Chests of Tea*, 9 Wheat. 428, recognized that customs laws were particularly adapted for use by merchants, and that it might well be that commodities which were well known among those who were engaged in the trade, under a certain designation might not be so known, by those who were not engaged in trade; that the Congress was to be understood as speaking in terms of the trade; and that if an article, although not commonly known as designated by the law, was uniformly, definitely, and generally known by that designation in the trade and commerce of the country, it should be included within the statutory term. This rule has been carried down through the years, continuously. \* \* \*

The *Armand Schwab & Co., Inc.*, case, *supra*, speaking of requirements to establish commercial designation, states that "unless it clearly appears to the contrary, tariff acts are to be construed according to the commercial understanding of the terms employed therein. It is equally true that it will be presumed that the common and commercial meaning of such terms are the same, and that in order to prove commercial designation it must be established that a tariff term has a meaning in the trade and commerce of the United States different from its common meaning and that such commercial meaning is definite, uniform, and general throughout the United States."

The statutory provision in paragraph 1761, *supra*, under which plaintiff seeks classification for the instant merchandise, is "Shellfish, fresh or frozen \* \* \*, or prepared or preserved in any manner (including pastes and sauces), *and not specially provided for*" [italics added], and the term toward which all of plaintiff's commercial testimony is directed is "shellfish sauce." The key or basic word in the term is "sauce," of which the common meaning (Funk & Wagnalls New Standard Dictionary) is "An appetizing dressing for food usually liquid and composed of several ingredients." That definition is in substantial agreement with plaintiff's trade understanding of "shellfish sauce," i. e., a liquid, prepared with shellfish or flavored with its juice, and mixed with two or more substances, the only difference being the parenthetical phrase descriptive of the kind of sauce—"Shellfish." Where, as we find in the instant case, the common and commercial meaning of a term are the same, then commercial testimony on the issue becomes immaterial. *Maddock* v. *Magone*, 152 U. S. 368.

The provision in paragraph 1761, *supra*, however, is not general and all-inclusive, but is limited, by virtue of the "not specially provided for" clause, to shellfish sauce not elsewhere provided for in the tariff act. So while the instant merchandise is in fact a form or class of shellfish sauce, commercially known as oyster sauce, it is classifiable

under said paragraph 1761, only if it is not more specifically provided for.

Applying the common and commercial meaning of "shellfish sauce," as hereinabove set forth, to "oyster sauce," using the appropriate descriptive terms, we find that "oyster sauce" is an appetizing food dressing, usually liquid, made of oysters or oyster juice, in combination, or mixed with two or more substances or ingredients. Such description, applicable to the instant merchandise, fits exactly the specific provision in paragraph 721 (e), *supra*, under which the product was classified. In other words, the descriptive provision in said paragraph 721 (e) for "Oysters, oyster juice, or either in combination with other substances," has been carved out of the general one, "shellfish sauce," embodied in paragraph 1761, *supra*, removing from the latter and bringing to the former, merchandise of the kind under consideration.

In *Wo Kee & Co. et al.* v. *United States*, 4 Cust. Ct. 8, C. D. 269, this court's statutory construction was quoted with approval by the Court of Customs and Patent Appeals in its affirmance, *Wo Kee & Co. et al.* v. *United States*, 28 C. C. P. A. 272, C. A. D. 154, *supra*, and because it so aptly covers the scope of the tariff provisions under discussion, we repeat the judicial expression here:

* * * We feel that a sauce so manufactured, even where the integuments etc., are not distinguishable from those of other shellfish, does not fall outside of paragraph 721 (e). It is a very specific provision relating to oysters and oyster juice and their combinations, much more specific than shellfish sauce is. .

* * * * * * *

If we sustained the claim that this comparatively simple process of preparation removed the resulting article beyond the stage of "oysters or oyster juice or either in combination with other substances" we would create a distinction too fine to have been in the mind of Congress in framing this paragraph. The claimed construction would take out of paragraph 721 (e) articles very similar in kind to those it was admittedly designed to cover. The process described in the incorporated record produces a product, which, from every practical point of view, is very similar to and not far removed from oyster juice itself, which is plainly within the paragraph. Nor do we think that the testimony taken in New York on transfer there tending to show an administrative practice to describe it as "oyster sauce" or to sell it commercially as "oyster sauce" would lead to a different result in the form the issue arises here under the 1930 act. * * *

Plaintiff's reference to legislative history is the same as that presented by counsel in *Wo Kee & Co. et al.* v. *United States*, 28 C. C. P. A. 272, C. A. D. 154, *supra*. The disposition of the point there is equally applicable here. We therefore quote:

Appellants invoke the legislative history of paragraph 721 (e) in support of their contentions. We find nothing in either that paragraph or paragraph 1761, to warrant a resort to their legislative history, so far as the question before us is concerned.

The protests are overruled and the decision of the collector in each instance is affirmed. Judgment will be rendered accordingly.