**No. 54140.**—Alexander-Mock & Company v. United States, protest 89667–K (Galveston).

FORD, Judge: The merchandise involved in the protest listed above was invoiced and entered as sisal or henequen rope under three-fourths of an inch in diameter, and duty was levied thereon at the rate of 2 cents per pound plus 15 percent ad valorem under paragraph 1005 (a) (1) of the Tariff Act of 1930. The plaintiff claims said merchandise to be properly dutiable at only 1 cent per pound plus 7½ percent ad valorem under said paragraph 1005 (a) (1), as modified by the trade agreement with the Netherlands, T. D. 48075.

Paragraph 1005 (a) (1) of the Tariff Act of 1930, under which the assessment was made, reads as follows:

PAR. 1005. (a) Cordage, including cables, tarred or untarred, composed of three or more strands, each strand composed of two or more yarns:

(1) Wholly or in chief value of manila (abaca), sisal, henequen, or other hard fiber, 2 cents per pound; and in addition thereto, on any of the foregoing smaller than three-fourths of one inch in diameter, 15 per centum ad valorem; * * *.

Paragraph 1005, as modified by said trade agreement, *supra*, under which the plaintiff claims the merchandise to be dutiable, is as follows:

1005 (a) Cordage, including cables, tarred or untarred, composed of three or more strands, each strand composed of two or more yarns:

(1) Wholly or in chief value of sisal_____ 1¢ per lb.

Any of the foregoing smaller than three-fourths of 1 inch in diameter shall be subject to an additional duty of_____ 7½% ad val.

The only information before us as to how the collector actually classified the merchandise is the fact that he had before him at the time of his classification information to the effect that T. D. 48742 applied to this merchandise and his assessment of duty thereon as aforesaid under paragraph 1005 (a) (1) of the Tariff Act of 1930, rather than at the lower rate of duty under said paragraph, as amended by the trade agreement with the Netherlands, *supra*.

In the case of *Pan American Products Corp.* v. *United States*, Abstract 52705, in dealing with a similar situation, this court said:

\* \* \* In making his classification the collector is presumed to have given due consideration to both the original provisions of said paragraph 1005 (a) (1), providing for cordage in chief value of henequen, and to the provisions of the trade agreement providing for cordage in chief value of sisal. In making his classification, it must be presumed that had the collector found the merchandise herein to be composed in chief value of sisal, he would have applied the provisions of the trade agreement and assessed duty thereon at the rate of 1 cent per pound, or at the rate of 1 cent per pound and $7\frac{1}{2}$ percent ad valorem, as provided in said trade agreement. Not having so assessed the merchandise, but, on the contrary, having assessed the merchandise at the rate of 2 cents per pound, or 2 cents per pound and 15 percent ad valorem, it must be presumed that he found the merchandise to be composed in chief value of henequen, or, at least, that he found the merchandise not to be composed in chief value of sisal, the invoice descriptions and declarations to the contrary notwithstanding.

We desire to state, however, that it would appear to be much the better practice for the collector to furnish a clear, concise statement of his actual classification of imported merchandise.

During the trial of this case, on motion of counsel for the plaintiff, five pieces of cordage of various sizes were admitted in evidence and marked collective exhibit 1, as representative of the involved merchandise. There was also admitted in evidence as exhibit 2 a sample of the involved merchandise.

Briefly stated, the testimony of all of plaintiff's witnesses as to the proper classification of the involved merchandise is simply to the effect that the imported merchandise is composed of sisal, or Mexican sisal or henequen; that sisal and henequen are identical or practically the same thing; that they never bought any merchandise similar to that imported under the designation of henequen cordage, and that they never heard of merchandise similar to that here involved being referred to as henequen in the United States; that in their conversations and correspondence concerning the involved cordage, and in the sale to their customers, it was commonly known as sisal and understood to be sisal.

One witness also testified that prior to June 17, 1930, and subsequent to that time, there was a general, uniform, and definite meaning in the trade of articles like exhibit 2 herein, and that it was generally called sisal; that the word "henequen" was very seldom known in the trade commercially; that "Down in Mexico and Haiti I have seen a plant that was called sisal and was called henequen, apparently the same identical plant. I was told that."

The witness further testified as follows:

X Q. Did you actually see a sisal plant in Mexico?—A. I saw a plant I was told to be sisal.

X Q. Did you see one told to be henequen?—A. Yes, sir.

X Q. So, there are two different plants?—A. No, sir, they are the same plant.

\* \* \* \* \* \* \*

X Q. Then, in your opinion sisal and henequen are the same thing?—A. I think so, yes.

X Q. And that is why you say you sell them as the same thing in the trade?—A. Yes.

X Q. They are the same thing in the trade?—A. That is my opinion.

X Q. There is no such thing as cordage wholly or in chief value of henequen?—A. I think it is exactly the same, sisal and henequen.

\* \* \* \* \* \* \*

X Q. That is why you say Exhibit 2 is sisal?—A. We call it sisal, yes.

X Q. Is there a difference between sisal and henequen?—A. As far as I know, no.

X Q. They are identical?—A. In my opinion, yes.

The witness also stated that he had heard Mexican sisal referred to as henequen, and that "I don't think there is any difference. I think they are all the same thing down in Mexico, sisal and henequen."

Both factually and legally, the situation here presented appears to be very similar to that involved in *Pan American Products Corp. et al.* v. *United States*, 13 Cust. Ct. 117, C. D. 880. In that case this court said:

The claim of the plaintiffs, according to their brief, seems to be (1) that sisal and henequen are synonymous terms in the trade, and that the merchandise in question was therefore regarded as sisal cordage in the trade; (2) that the merchandise is in fact cordage made of sisal; * * *

As to the first point, we may say that even if henequen was also known as sisal or Mexican sisal in the trade, as testified by some of plaintiffs' witnesses, it is significant that Congress has expressly provided for sisal and henequen, and other hard fibers, in paragraph 1684 of the Tariff Act of 1930, as also for binding twine of sisal grass, henequen, etc., in paragraph 1622, as well as for cordage and twines of sisal, henequen, etc., in paragraph 1005 (a) and (b). And we think it is still more significant that in the trade agreement with the Netherlands the lower rate of duty accorded to cordage under paragraph 1005 (a) (1) is limited to cordage "wholly or in chief value of *sisal*," and not also extended to cordage wholly or in chief value of manila, henequen, or other hard fiber, while the reduced rate under paragraph 1005 (b) is made to apply equally to cords and twines wholly or in chief value of "manila (abaca), *sisal, henequen*, or other hard fiber."

From this and information gathered (1) from the "Digests of Trade Data Respecting the Products Affected by the 'Concessions Granted by the United States in the Trade Agreement with the Kingdom of the Netherlands'," at pages 130, 131, and 135, compiled by the United States Tariff Commission; (2) Circular No. 186, October 1931, issued by the United States Department of Agriculture, entitled "Sisal and Henequen, Plants Yielding Fiber for Binder Twine," pages 1 and 7; (3) "Digests of Trade Data with Respect to Products on which Concessions Were Granted by the United States" concerning the "Trade Agreement between the United States and Mexico" (T. D. 50797), at pages 198, 200, 202, 203, and 206, compiled by the United States Tariff Commission; and (4) "Tariff Readjustments, 1929," —Hearings before the Committee on Ways and Means, 70th Congress, 2d session, vols, 8, 9, and 10, at page 5978, referred to by the Government in its brief, we think it is definitely shown that both Congress and the negotiators of the trade agreement with the Netherlands used the terms "sisal" and "henequen" in the botanical sense, namely, as referring to the plant or fiber known botanically as "Agave sisalina" and "Agave fourcroydes," respectively, and that in the tariff sense "sisal" and "henequen" were therefore not to be considered as being the same thing.

Therefore the fact that in the trade agreement with the Netherlands the modification of said paragraph 1005 (a) has omitted henequen cordage, while the modification of paragraph 1005 (b) expressly includes henequen cords, further strengthens the view that henequen cordage, as distinguished from sisal, was not intended to be included under the modification of said paragraph 1005 (a), under the legal maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of the other). [Italics quoted.]

In its original opinion in the *Pan American Products Corp. et al.* case, *supra*, this court sustained the plaintiffs' claim, based upon invoice descriptions of the merchandise. In deciding the case on rehearing, however, this court observed:

There may arise instances where invoice descriptions and declarations should be given some evidentiary value, as in the *Sleater* and *Bloomingdale* cases, *supra*, but under the facts and circumstances herein, this is not a case where such evidentiary value should be given to invoice descriptions and declarations as to overcome the presumption of correctness in favor of the collector's classification.

In its brief filed herein, counsel for the plaintiff contends that:

* * * the Bureau of Customs, in T. D. 48742, *supra*, arrived at an erroneous legal conclusion upon the basis of which it ordered that merchandise like that at bar, when imported from Cuba or Mexico, should be assessed with duty at the higher rate provided under paragraph 1005 (a), *supra*, of the Tariff Act of 1930, without the benefit of the reduction provided by the Netherlands Trade Agreement "unless the importer shall present satisfactory evidence that the cordage in question is manufactured from the fiber of the *Agave Sisalana*."

In this case, as in all such cases, it is the classification of the collector to which the presumption of correctness attaches, not some ruling or opinion by the

Bureau of Customs, which the plaintiff has to overcome by competent, credible evidence at the trial of the case. In our opinion, we are not here required to pass upon the correctness of the ruling or opinion expressed by the Bureau of Customs in T. D. 48742.

Counsel for the plaintiff, in his brief filed herein, contends that the merchandise at bar is commercially known as sisal. This contention is apparently based upon the testimony of one witness to the effect that prior to June 17, 1930 and subsequent thereto, there was a uniform, general, and definite meaning in the trade of articles like exhibit 2 herein. It is observed from the record before us that only one witness gave testimony concerning commercial designation of the involved merchandise. In *United States* v. *Oberle*, 1 Ct. Cust. Appls. 527, T. D. 31545, our appellate court, in dealing with a similar situation, said:

Moreover, there is evidence in the record that whether or not an article comes within the designation of "toys" when used in the tariff act is a question of commercial designation. If the decisions of the board are rested upon the testimony consolidated herewith by the Board of General Appraisers in making decision of these protests, that testimony in that particular is plainly and unequivocally insufficient. But one witness testified, an employee of the importers, that these articles were commercially known as toys. One witness is insufficient for the purpose of establishing commercial designation when the testimony is no other than that included in this record.

In support of his contention that under the rule of commercial designation, the involved merchandise should be held to be composed in chief value of "sisal," counsel for the plaintiff quotes the following from *Cadwalader* v. *Zeh*, 151 U. S. 171:

\* \* \* It has long been a settled rule of interpretation of the statutes imposing duties on imports, that if words used therein to designate particular kinds or classes of goods have a well known signification in our trade and commerce, different from their ordinary meaning among the people, the commercial meaning is to prevail, unless Congress has clearly manifested a contrary intention; and that it is only when no commercial meaning is called for or proved, that the common meaning of the words is to be adopted.

We are in agreement with the rule laid down in the *Cadwalader* case, *supra*, but those pronouncements are not here applicable for the reason that, in our opinion, the plaintiff has failed to establish by credible evidence that the involved merchandise had a commercial meaning different from its common meaning which was uniform, definite, and general throughout the United States. *200 Chests of Tea: Smith, Claimant*, 22 U. S. 428; *United States* v. *112 Casks of Sugar*, 33 U. S. 277; *Elliott* v. *Swartwout*, 35 U. S. 137; *Arthur* v. *Cumming et al.*, 91 U. S. 362; and *Maddock* v. *Magone*, 152 U. S. 368.

Upon a full consideration of the record before us, for the reasons stated and in line with the authorities cited and quoted, we hold that the plaintiff has failed to establish a *prima facie* case by overcoming the presumption of correctness in favor of the collector's classification and offering credible testimony establishing one of its claims. All claims of the plaintiff are therefore overruled. Judgment will be rendered accordingly.